

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

                Plaintiff,

      v.

JEFF S. SMITH,

                Defendant.

17 Civ. 5808

### DECLARATION OF PIETRO J. SIGNORACCI IN SUPPORT OF INTERNATIONAL BUSINESS MACHINES CORPORATION'S APPLICATION FOR LEAVE TO FILE UNDER SEAL

Pietro J. Signoracci declares, under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am admitted to practice before this Court and am associated with the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys for Plaintiff International Business Machines Corporation ("IBM") in this action. As such, I am personally familiar with the facts set forth herein. I respectfully submit this declaration in support of IBM's application for an order to show cause for leave to file under seal its Application for a Temporary Restraining Order and Motion for a Preliminary Injunction.

2. Attached as **Exhibit 1** is a true and correct copy of the Declaration of Arvind Krishna, executed on July 31, 2017.

3. As alleged in the Complaint in this action, the purpose of this litigation is to enjoin Defendant Jeff S. Smith, who was a senior executive at IBM until his resignation effective May 2, 2017, from violating his fiduciary and contractual obligations to IBM.

4. Mr. Smith gave notice to IBM on June 13, 2017 that he had accepted employment with Amazon Web Services ("AWS"). Mr. Smith stated that he intended to commence employment with AWS on August 7, 2017.

5. IBM, together with its counsel, collected Mr. Smith's work-issued electronic devices and performed forensic review on those devices. This review revealed that, before returning his work-issued phone and tablet computer, Mr. Smith had wiped each device of all data, making it impossible for IBM to determine whether Mr. Smith had downloaded or transferred any IBM confidential information from those devices to other locations.

6. On June 15, 2017, counsel for IBM made a written request to Mr. Smith's counsel, Ronald Richman and Max Garfield of Schulte Roth & Zabel LLP, for information regarding Mr. Smith's proposed role at AWS. Over the course of the next few weeks, counsel for IBM, counsel for Mr. Smith, and counsel for AWS (Sarah Bouchard at Morgan Lewis & Bockius LLP) participated in discussions regarding a potential resolution of this matter outside of court.

7. On July 5, 2017, IBM delivered to counsel for Mr. Smith a proposed confidentiality agreement to cover settlement discussions. On July 6, 2017, counsel for Mr. Smith returned a signed confidentiality agreement. On July 14, 2017, Mr. Smith's counsel delivered to IBM a written description of Mr. Smith's proposed role at AWS (in response to IBM's request of June 15, 2017). On July 17, 2017, counsel for IBM and counsel for Mr. Smith met to discuss potential resolution of the matter.

8. On Friday, July 21, counsel for IBM, counsel for Mr. Smith, and counsel for AWS had a telephone conference to discuss potential resolution of the matter.

On Monday, July 24, counsel for IBM requested additional information from counsel for AWS and counsel for Mr. Smith. On Saturday, July 29, 2017 IBM received in response a written proposal for a resolution of this matter from counsel for AWS and counsel for Mr. Smith.

9. On Monday, July 31, 2017, at 1:30 pm, counsel for IBM, counsel for Mr. Smith, and counsel for AWS had a telephone conference continuing discussions for a potential resolution of this matter. At the end of that conference call, counsel for IBM stated that the parties appeared to have reached an impasse.

10. At 4:37 pm on Monday, July 31, 2017, I called Ronald Richman of Schulte Roth & Zabel LLP, counsel for Mr. Smith. Mr. Richman was unavailable, and his assistant informed me that he would call me back. At 4:54 pm on the same day, Max Garfield of Schulte Roth & Zabel LLP, counsel for Mr. Smith, returned my call. I informed him that IBM would seek a temporary restraining order and preliminary injunction from this Court at 9:00 am on Tuesday, August 1, 2017, to enjoin Mr. Smith from violating his fiduciary and contractual obligations to IBM. I also informed Mr. Garfield that IBM would seek leave to file under seal its papers in support of its application for a temporary restraining order. Mr. Garfield did not consent to IBM filing its papers under seal.

11. To my knowledge, no prior application for this or similar relief has been made in this or any other action.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Pietro J. Signoracci

Executed on July 31, 2017
New York, New York

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>              Plaintiff,<br><br>     v.<br><br>JEFF S. SMITH,<br><br>              Defendant. | 17 Civ. _____<br><br>**DECLARATION OF<br>ARVIND KRISHNA** |

Arvind Krishna declares pursuant to 28 U.S.C. § 1746:

1. I am the Director of Research at International Business Machines Corporation ("IBM" or "the Company"), and the Senior Vice President of IBM Hybrid Cloud. I have worked for IBM since December 1990, serving in a variety of research, technology and senior management positions. I was appointed to my current position by the Chief Executive Officer of IBM in January 2015.

2. I submit this declaration in support of IBM's application for an order to show cause for leave to file under seal its Motion for Preliminary Injunction and all IBM confidential information submitted in connection with the motion for injunctive relief that IBM makes to enjoin Jeff Smith from taking a position as Vice President of Amazon Web Services ("AWS"), one of IBM's principal competitors, during the remaining 9 months of his non-competition agreement.

3. From August 2014 until his recent resignation in May 2017 from IBM, Mr. Smith was one of the top 65 executives at IBM, a company with more than 380,000

employees. During that period of time, Mr. Smith was the Chief Information Officer ("CIO"), Transformation and Operations.

4. By virtue of his role, Mr. Smith was a member of IBM's senior executive leadership team, which meets quarterly to discuss IBM's performance and develop competitive strategies to win business from customers. He also was a member of IBM's senior technology development team, which meets six times a year to discuss new technologies and product and service development plans.

5. Precisely because of his exposure to highly confidential and commercially sensitive information, Smith was one of IBM's senior executives who signed a Noncompetition Agreement to restrict the potential disclosure of confidential IBM information in the event that he left the Company.

6. On June 13, 2017, Mr. Smith's counsel provided formal notice to IBM that Mr. Smith had accepted a position to start competing against IBM on August 7, 2017 by joining AWS.

7. Were he permitted to join the senior management of AWS on August 7, 2017, I believe Mr. Smith would inevitably be involved in decision-making about how best to compete against IBM and would inevitably disclose or use IBM trade secrets and other highly confidential and competitively sensitive subjects regarding IBM's proprietary plans, products, and strategies.

8. IBM's Application for a Temporary Restraining Order and Motion for a Preliminary Injunction, together with the accompanying papers, contain certain IBM trade secrets and confidential information concerning plans for new products and services IBM designed specifically to compete against AWS, which are expected to be launched in the

coming year. They and the documents they attach contain highly confidential product design and development plans, the cost, capabilities, and functions of those products in development, competitive strategies, and other financial information.

9. The materials that contain this highly confidential and competitively sensitive information that Mr. Smith obtained in his role as CIO and through his membership on IBM's senior executive leadership and technology development teams were not distributed generally, and were kept in strict confidence among limited members of IBM executives and employees.

10. All discussions and materials for IBM's senior technology development team are to be kept strictly confidential. To illustrate how sensitive these materials are, even within IBM, one of the documents discussed in IBM's Application for a Temporary Restraining Order and Motion for Preliminary Injunction and attached in the accompanying papers was so sensitive, and so potentially damaging were it to be shared, that I directed all team members to destroy their copies of these materials less than a week after the materials were distributed.

11. The balance of these materials prepared for the IBM's senior executive leadership team and the senior technology development team meetings are each marked "IBM Confidential," a designation used within IBM to indicate confidential information. The information in these materials—and the information described in IBM's Application for a Temporary Restraining Order and Motion for Preliminary Injunction and accompanying papers—is highly confidential even within IBM. The information contained therein is not publicly available.

I declare under penalty of perjury that the foregoing is true and correct.

                                                                            */s/ Arvind Krishna*
                                                                               Arvind Krishna

Executed on July 31, 2017