# Schulte Roth&Zabel LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2048

Writer's E-mail Address
ronald.richman@srz.com

August 7, 2017

**VIA ECF**

The Honorable Paul E. Davison
United States Magistrate Judge
The Hon. Charles L. Brieant Jr. Federal Building and
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

  Re: *International Business Machines Corporation v. Jeff S. Smith*
     Case No. 7-17-cv-05808 (CS)(PED)

Dear Magistrate Judge Davison:

  Schulte Roth & Zabel LLP is co-counsel to defendant Jeff Smith[1] in the captioned litigation. We write regarding several disputes that have arisen between the parties as to expedited discovery and other issues in advance of the preliminary injunction hearing scheduled in this matter for August 21st and August 24th before Judge Seibel.

  By way of background, plaintiff International Business Machines Corporation ("IBM") commenced this litigation on August 1, 2017 seeking, *inter alia*, a temporary restraining order and preliminary injunction barring Mr. Smith from commencing work as a Vice President at Amazon Web Services, Inc. ("AWS"), a subsidiary of Amazon.com, Inc., on the basis of a non-competition agreement between Mr. Smith and IBM. From August 2014 through May 2017, Mr. Smith worked as IBM's Chief Information Officer ("CIO"). IBM alleges that the non-competition agreement bars Mr. Smith from working for AWS for twelve months following May 2, 2017, the date on which Mr. Smith resigned from IBM.

  Mr. Smith notified IBM on June 13, 2017 that he had accepted the AWS position and intended to commence employment on August 7, 2017. As a result of settlement discussions among the parties and AWS following Mr. Smith's notification to IBM – which ultimately did not resolve the parties' dispute – IBM has known since at least July 12, 2017 that Mr. Smith was not willing to agree to wait until May 2018 to begin working for AWS. Despite its advance

---

[1] Although identified in the complaint as "Jeff S. Smith," Mr. Smith's middle initial is "P".

knowledge of Mr. Smith's intentions, IBM waited until August 1 – less than a week before Mr. Smith's August 7 start date at AWS – to file this lawsuit and seek preliminary relief.

During a hearing on August 1 before Judge Seibel, the Court rejected, in part, the temporary restraining order IBM sought and permitted Mr. Smith to commence employment at AWS on August 7, 2017, Mr. Smith's intended start date, with certain restrictions. (*See* Docket Entry No. 4.) The parties advised the Court that they wished to take expedited discovery (although no order concerning discovery was issued). Further, Judge Seibel ordered the parties to submit affidavits of direct testimony and proposed findings of fact and conclusions of law to the Court by 9 a.m. on August 14, 2017. The Court scheduled the preliminary injunction hearing for August 14 and August 21.

On August 2, the day following the Court hearing, the parties conferred and agreed to exchange documents by 5 p.m. on Tuesday August 8. Also on August 2, we advised counsel to IBM that we intended to take the depositions of (at least) three IBM witnesses: (i) Arvind Krishna, IBM's lead declarant who signed the sole non-attorney declaration IBM submitted in support of its application for a temporary restraining order and preliminary injunction, to which all of the documents IBM alleges contain IBM's trade secrets and confidential information were attached, (ii) James Kavanaugh, Mr. Smith's direct supervisor at IBM, and (iii) Fletcher Previn, one of Mr. Smith's direct reports at IBM and Mr. Smith's successor as CIO at IBM. At that time, IBM indicated that it wished to depose Mr. Smith, but did not commit to taking the deposition of Andrew Jassy, the Chief Executive Officer of non-party AWS and the person to whom Mr. Smith will report at AWS. Nonetheless, counsel for Mr. Smith informed IBM that Mr. Jassy was unavailable from August 10-20 to avoid any confusion later.

Against this backdrop, despite our and AWS's best and good-faith efforts, issues have arisen with respect to deposition scheduling that we have been unable to resolve. First, IBM has impeded Mr. Smith's ability to depose witnesses under IBM's control by proposing only dates that confer a blatant tactical advantage upon IBM. IBM has advised us that Mr. Krishna, whom IBM chose as its lead declarant, is out of the country until August 11 and available for a deposition on *Sunday* August 13 – the day before the parties' pre-hearing submissions to the Court are due – or anytime during the *following* week. Given the deadline for pre-hearing submissions by 9 a.m. on August 14, depositions that take place on or after August 14 are substantially less valuable for the party taking them. (As an aside, Mr. Smith has serious concerns that IBM selected Mr. Krishna as its lead declarant solely to frustrate the process given that Mr. Krishna appears to lack first-hand or personal knowledge of many of the facts set forth in his Declaration.) IBM advised that Mr. Kavanaugh is available for deposition on August 8 – before the parties exchange document productions – and then on vacation from August 9 through August 19. IBM has not even proposed a date when Mr. Previn is available to be deposed and continues to respond to Mr. Smith's attempts to take appropriate discovery by not even mentioning Mr. Previn.

As to Mr. Jassy, Mr. Smith and non-party AWS have offered two reasonable proposals to address the discovery issues, and to accommodate IBM's request to depose Mr. Jassy, despite that Mr. Jassy lives and works in Seattle, Washington, is beyond the subpoena

power of this Court to compel Mr. Jassy to attend the hearing, and may be unavailable to testify at the hearing on August 21 or 24 due to longstanding personal and professional commitments.

First, we suggested to IBM that the parties jointly seek the Court's permission to briefly postpone the preliminary injunction hearing until early September, and to extend the temporary restraining order now in effect in the interim. IBM rejected this offer.

We then offered to provide IBM with Mr. Jassy's affidavit of direct testimony on August 8 and to make him available for deposition on August 9, which testimony would serve as his cross-examination during the hearing. IBM also rejected this offer. Then, at approximately 6 p.m. on Friday August 4, counsel for IBM sent us a subpoena to take Mr. Jassy's deposition – despite the fact that, as noted, Mr. Jassy is not within the Court's subpoena power. (Counsel ultimately accepted service of the subpoena purely to prevent IBM from harassing Mr. Jassy and his family in attempting to serve an unenforceable subpoena, but Mr. Jassy still was personally served at his home.)

Mr. Smith is willing to proceed to the hearing without either party taking depositions of any witnesses. Mr. Smith is also willing to proceed to the hearing with deposition discovery, but only if each party acts reasonably in terms of making witnesses available on dates that do not put the other party at a tactical disadvantage – *i.e.*, following the exchange of documents and in advance of the time pre-hearing submissions are due. IBM knew Mr. Smith was taking the AWS job nearly two months before his intended start date and then waited nearly three weeks to commence litigation after IBM knew Mr. Smith would not comply with IBM's unwavering demand that he sit out a full year. IBM alone created this logistical crunch through its inaction and gamesmanship. Even if the vacation schedules of its witnesses are merely and truly a coincidence, IBM is attempting to use those vacations to manipulate discovery to its advantage. A one-sided opportunity to depose witnesses is neither fair nor appropriate.

Separately, following a diligent and expeditious process, on August 4, only three days after IBM commenced litigation and only four days after IBM declared that the parties' settlement discussions had reached an impasse, Mr. Smith, through counsel, located an expert witness for this litigation. We notified IBM's counsel promptly after this expert was retained. The parties are in the midst of attempting to negotiate a protective order. We have suggested using the form of protective order similar to what the same law firms involved in this dispute used in prior non-compete litigation when an employee left IBM. Significantly, IBM has taken the position that no expert witness can have access to documents IBM declares "Highly Confidential."[2] This position is untenable. A key issue in this dispute involves IBM's assertion that certain information to which Mr. Smith allegedly was exposed – eight or more months ago – constitutes protectable trade secrets and proprietary confidential information. Even putting aside questions of whether the information is actually secret, whether Mr. Smith possesses any of the

---

[2] Other issues with the draft protective order are minor and easily resolvable. For example, IBM insists on a provision that precludes AWS personnel from access to documents IBM declares "Highly Confidential." Neither Mr. Smith nor AWS have any objection to such a provision. Co-counsel to Mr. Smith, who separately serves as counsel to AWS, already made such a representation in Court that they would not share alleged confidential IBM information with AWS personnel.

information today, the staleness of the information, and the utility to AWS of such information, Mr. Smith's skill set is primarily in managing and leading organizations and not in creating or designing technology. Under IBM's proposed approach, no one who actually possesses appropriate knowledge of the technologies at issue will be permitted to challenge any of IBM's assertions. IBM cannot be the judge and jury of assessing its own self-serving allegations. Time is of the essence given the expedited discovery and hearing schedule, and IBM is dragging its feet on agreeing to what should be a boilerplate agreement and process.

Finally, on August 1, IBM sought to file its application for a temporary restraining order and preliminary injunction and supporting papers, including its memorandum of law and supporting declarations and exhibits, under seal. Judge Seibel granted IBM's request to an extent, but ordered IBM to file publicly on the Court's ECF system redacted copies of these papers by August 4, 2017. Judge Seibel's order provided that IBM's redactions were to be "limited to trade secrets and confidential information." (*See* Docket Entry No. 5.) On August 4, 2017, IBM publicly filed these papers. Among the redactions, IBM blocked out references to communications between Mr. Smith and Mr. Jassy at AWS while Mr. Smith was at IBM. The content of those communications have no legitimate basis to be sealed. While apparently embarrassing to IBM, redacting such information from public access is without legitimate basis and improper. To establish "good cause" for redaction of information, a party must demonstrate that 'a clearly defined and serious injury . . . would result from disclosure of the document.'" *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, No. 04-CV-5540 (DGT), 2010 WL 3924689, at *2 (E.D.N.Y. Sept. 28, 2010) (internal quotation marks omitted) (ellipses in original) (quoting *Allen v. City of New York*, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006)). "Where the document sought to be shielded from disclosure is part of the official court file, the Court must consider the public's presumptive right of access to such materials in making its determination as to good cause." *Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-CV-5023 (CBA), 2010 WL 889799, at *2 (E.D.N.Y. Mar. 8, 2010). "A 'generalized concern of adverse publicity' is not, however, a sufficiently compelling reason to outweigh the presumption of access. On the contrary, the party seeking to maintain redactions must make a sufficient showing of good cause to justify the sealing of portions of judicial documents." *Id.* at *8. Accordingly, Mr. Smith respectfully requests an order from the Court mandating IBM to publicly re-file these papers without these improper redactions.

We respectfully request the Court's intervention to address and resolve each of these issues. Specifically, we request the following determinations:

- A postponement of the preliminary injunction hearing with the current temporary restraining order restrictions remaining in place; or

- In the alternative, the preliminary injunction hearing to proceed on August 21 and 24, with no depositions except for Mr. Jassy's two hour deposition, which may be utilized at the preliminary injunction hearing, along with his affidavit of direct testimony (IBM has not indicated that any of the witnesses it controls are unavailable to appear at the hearing dates currently in place.);

- The entry of a Protective Order that permits the expert witness located by Mr. Smith to review IBM's "Highly Confidential" documents under a Stipulation of Confidentiality; and,

- The unsealing of the portion of any documents filed by IBM that are improperly still sealed before the Court.

We are available at the Court's convenience to answer any questions or participate in a conference either by telephone or in person. We thank the Court, in advance, for its attention to this matter.

Respectfully submitted,

*Ronald E. Richman /MG*

Ronald E. Richman

cc: All Counsel of Record (via ECF)