PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(212) 373-3183

WRITER'S DIRECT FACSIMILE
(212) 492-0183

WRITER'S DIRECT E-MAIL ADDRESS
ratkins@paulweiss.com

UNIT 3601 OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU  U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST SUITE 3100
PO BOX 226
TORONTO ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W ABBOTT
EDWARD T ACKERMAN
ALLAN J ARFFA
ROBERT A ATKINS
DAVID J BALL
JOHN F BAUGHMAN
LYNN B BAYARD
DANIEL J BELLER
CRAIG A BENSON
MITCHELL L BERG
MARK S BERGMAN
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L BROCHIN
RICHARD J BRONSTEIN
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JESSICA S CAREY
JEANETTE K CHAN
YVONNE Y F CHAN
LEWIS R CLAYTON
JAY COHEN
KELLEY A CORNISH
CHRISTOPHER J CUMMINGS
CHARLES E DAVIDOW
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
ALICE BELISLE EATON
ANDREW J EHRLICH
GREGORY A EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A FIELDSTON
ANDREW C FINCH
BRAD J FINKELSTEIN
BRIAN P FINNEGAN
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
HARRIS B FREIDUS
MANUEL S FREY
ANDREW L GAINES
KENNETH A GALLO
MICHAEL E GERTZMAN
ADAM M GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D GOLDBAUM
NEIL GOLDMAN
CATHERINE L GOODALL
ERIC GOODISON
CHARLES H GOOGE, JR
ANDREW G GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A GUTENPLAN
GAINES GWATHMEY, III
ALAN S HALPERIN
JUSTIN G HAMILL
CLAUDIA HAMMERMAN
GERARD E HARPER
BRIAN S HERMANN
MICHELE HIRSHMAN
MICHAEL S HONG
DAVID S HUNTINGTON
AMRAN HUSSEIN
LORETTA A IPPOLITO
BRIAN M JANSON
JAREN JANGHORBANI
MEREDITH J KANE

ROBERTA A KAPLAN
BRAD S KARP
PATRICK N KARSNITZ
JOHN C KENNEDY
BRIAN KIM
ALAN W KORNBERG
DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
DANIEL J LEFFELL
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
MARK F MENDELSOHN
WILLIAM B MICHAEL
TOBY S MYERSON
CATHERINE NYARADY
JANE B O BRIEN
ALEX YOUNG K OH
BRAD R OKUN
KELLEY D PARKER
MARC E PERLMUTTER
VALERIE E RADWANER
CARL L REISNER
LORIN L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
JACQUELINE P RUBIN
RAPHAEL M RUSSO
ELIZABETH M SACKSTEDER
JEFFREY D SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JOHN M SCOTT
STEPHEN J SHIMSHAK
DAVID R SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J SIMONS
AUDRA J SOLOWAY
SCOTT M SONTAG
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F TARNOFSKY
MONICA K THURMOND
DANIEL J TOAL
LIZA M VELAZQUEZ
MARIA T VULLO
ALEXANDRA M WALSH*
LAWRENCE G WEE
THEODORE V WELLS JR
BETH A WILKINSON
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
MARK B WLAZLO
JULIA MASON WOOD
JENNIFER H WU
JORDAN E YARETT
KAYE N YOSHINO
TONG YU
TRACEY A ZACCONE
TAURIE M ZEITZER
T ROBERT ZOCHOWSKI JR

*NOT ADMITTED TO THE NEW YORK BAR

August 9, 2017

**By ECF**

The Honorable Paul E. Davison
United States Magistrate Judge
The Honorable Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

   *International Business Machines Corporation* v. *Jeff S. Smith*, No. 17 Civ. 5808

Dear Judge Davison:

   We represent Plaintiff International Business Machines Corporation ("IBM"). Pursuant to the Court's order from earlier today, we are submitting this letter in response to Defendant Jeff Smith's August 9 letter asking the Court to direct IBM to share confidential IBM materials with Smith's proffered expert, Bernard Golden. Smith's request should be denied.

   Smith's letter is in large part dedicated to an attempted defense of Mr. Golden's credentials and supposed impartiality, and suggests that the appropriate recourse for IBM to challenge Mr. Golden is through cross-examination. Smith has missed the point. IBM does not dispute that Smith may be entitled to proffer *an* expert. Nor does IBM disagree with Smith that an appropriate way to impeach or undermine such an expert is by demonstrating his or her lack of qualifications, bias, or other

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison	2

deficiencies.[1]  But the issue before the Court right now does not concern either Mr. Golden's expert qualifications or his lack of independence—both of which we will raise at the appropriate time if need be.  The question now is the one the Court identified at the August 7 conference:  whether IBM would in effect be "inviting a competitor under the tent" by allowing Smith to share its confidential information with Mr. Golden.  (*See* Ex. 1 at 27:7–8.)  The answer to that question is "yes."

To begin with, there is no dispute that Mr. Golden does work in the cloud computing space.  According to Smith, Mr. Golden "consult[s] with firms . . . who want advice on cloud computing from a user perspective," work that, Smith has told us, "takes the form of business and technical assessment of cloud adoption opportunities, application architecture recommendations, [and] vendor selection criteria."  (*See* Ex. 2 at 2.)  According to Smith, Mr. Golden is "one of the top ten thought leaders in" cloud computing and "knows pretty much everything about cloud computing."  (*See* Ex. 1 at 14:5–10; 24:25–25:2.)

But that is not all.  Mr. Golden currently does work for (i) Google, which like Amazon Web Services ("AWS") is one of the biggest cloud computing companies in the country and one of IBM's biggest competitors; and (ii) Warburg Pincus, the investment firm that just recently hired an executive from Microsoft, the other major IBM cloud computing competitor, to invest in cloud computing companies that compete with IBM.  In particular, here are the details we know right now:

Most importantly, Mr. Golden currently does work for Google.  As Smith has conceded, "Google is a current client of Mr. Golden's, for which he writes and provides commentary on cloud computing user topics[.]" (*See* Ex. 2 at 2.)  Significantly, Google is a direct competitor of IBM in cloud computing.  There can be no doubt of this.  AWS's own CEO, Andrew Jassy, admitted at his deposition earlier today that Google is one of AWS's main cloud competitors.  And, AWS has sued former employees who have left AWS for Google to enforce their noncompetition agreements.[2]  Moreover, market observers have noted that AWS, Google, and IBM all compete in cloud computing.  *See, e.g.*, Chris Nolter, *How Amazon, Microsoft, Google and IBM Battle for Dominance in the Cloud*, Street (Mar. 31, 2017), https://www.thestreet.com/story/14066479/1/how-amazon-microsoft-google-and-ibm-battle-for-dominance-in-the-cloud.html; Joe Panettieri, *Cloud Market Share 2017: Amazon AWS, Microsoft Azure, IBM, Google*, ChannelE2E (Feb. 9, 2017), https://www.channele2e.com/channel-partners/csps/cloud-

---

[1]  Because IBM is not at this point challenging Mr. Golden's qualifications to serve as an expert for Smith, the cases Smith cites in his letter for the proposition that "specialized testimony will assist the fact finder in understanding technical jargon and determining whether the at-issue information is truly proprietary"—are not relevant here and warrant no consideration.  *See* ECF No. 37 at 2.

[2]  For instance, in 2014, AWS sued a former strategic partnerships manager after he accepted employment with Google cloud Platform, *Amazon.com, Inc.* v. *Szabadi*, No. 14-2-18167 (Wash. Sup. Ct., King Cty.), and in 2012 AWS sued a former vice president after he joined Google as its director of cloud platform sales, *Amazon.com, Inc.* v. *Powers*, No. 2:12-CV-1911 (W.D. Wash., filed Oct. 30, 2012).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison                                                                                              3

market-share-2017-amazon-microsoft-ibm-google/ ("On the cloud market share front, Amazon Web Services (AWS) continues to lead the . . . pack, followed by Microsoft Azure, Google Cloud Platform and IBM Cloud.").

Mr. Golden's ongoing work for, and compensation from, Google should preclude him from viewing any highly confidential IBM materials because that work effectively places him under the tent of a direct IBM competitor. No one could reasonably dispute that Google itself would not be permitted to view IBM's highly confidential information if IBM were suing to enforce a noncompetition agreement against a former employee who had accepted employment with Google. The circumstances presented by Mr. Golden are not meaningfully different from that scenario. And, Mr. Golden's representation in the declaration he provided to us in response to the Court's order that he will not share IBM's highly confidential information with Google is simply not relevant. Just as IBM's confidential information should not be in the hands of AWS, it should not be in the hands of another direct IBM competitor. By doing cloud-related work for Google, Mr. Golden has made himself an IBM competitor.

Indeed, it bears noting that Smith has requested that IBM produce documents concerning its cloud technology up through the present, even though Smith left IBM months ago. Smith thus wants Mr. Golden to look at highly confidential IBM documents that Smith himself never would have seen and that coincide with Mr. Golden's recent and ongoing Google engagement. In other words, allowing Mr. Golden to view those materials would in some ways be more detrimental to IBM than allowing Smith to disclose to AWS what he learned while employed by IBM.

Critically, Mr. Golden has not even disclosed the nature of his work for Google—even though Smith has provided us with a written description of some of Mr. Golden's general work, then with two versions of Mr. Golden's résumé, and then with a declaration from Mr. Golden in response to the Court's order. And, tellingly, in that declaration Mr. Golden states that while he has "not seen any alleged IBM confidential information to date, the consulting work [he is] doing for Google *most likely* has little to no connection to that information." (*See* Ex. 3 at ¶ 3 (emphasis added).) Mr. Golden does not explain how he could have any legitimate basis for stating one way or the other whether IBM's confidential information relates to the work he does for Google since he presumably has not seen or been told about that information. The only way to be confident that IBM's confidential information does not relate to his work for Google is for Mr. Golden to disclose the precise work he does for Google. Or, if he is limited by a confidentiality or non-disclosure agreement with Google, he should disclose the nature or subject matter area of his work for Google. Either way, since Mr. Golden has asserted, but provided no substantiation for the assertion, that his Google cloud work is unrelated to IBM's cloud documents, the Court and IBM are entitled to the information necessary to form their own judgment.

Not only does Mr. Golden currently do work for Google, he also has performed and continues to perform work for Warburg Pincus, the private equity firm. Warburg Pincus announced several months ago that it had retained Paul Maritz "as an

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison     4

industry advisor in its Technology, Media and Telecommunications [] Group" to "explore investment opportunities in enterprise software, *including the application of cloud computing* and machine learning to business problems." Press Release, Warburg Pincus, Paul Maritz Joins Warburg Pincus as Industry Advisor (Apr. 18, 2017), http://www.warburgpincus.com/content/uploads/2017/04/Paul-Maritz-Advisor-Appointment.pdf (emphasis added). Significantly, Mr. Maritz is, among other things, a former senior executive at Microsoft—another direct IBM cloud competitor, as Mr. Jassy also testified at his deposition—where he spent a full 14 years and was a member of that firm's five-person executive committee, and to which he presumably has strong ties.

      If Smith truly wants an independent expert solely for the purpose of reviewing IBM's highly confidential information and translating them into lay terms for the Court, there is no shortage of people Smith can retain for that purpose; he is free to do so. But, as Your Honor recognized at the August 7 conference, parties to trade secrets litigation enter into protective orders to specifically "prohibit[] . . . commercial adversaries from seeing . . . each other's confidential information." (*See* Ex. 1 at 22:18–24.) Mr. Golden's retention as an expert in this matter would run headlong into that settled prohibition, and Smith has advanced no justification for any exception to that rule here. His request should therefore be denied.

                          Respectfully submitted,

                          Robert A. Atkins

cc (by ECF): Counsel of Record