**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL     (1946-1956)
SIMON H. RIFKIND     (1950-1995)
LOUIS S. WEISS       (1927-1950)
JOHN F. WHARTON      (1927-1977)

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3183

WRITER'S DIRECT FACSIMILE
(212) 492-0183

WRITER'S DIRECT E-MAIL ADDRESS
ratkins@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
BRIAN M. JANSON
JAREN JANGHORBANI
MEREDITH J. KANE

ROBERTA A. KAPLAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
LORIN L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JENNIFER H. WU
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

August 14, 2017

**By ECF**

The Honorable Paul E. Davison
United States Magistrate Judge
The Honorable Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

       *International Business Machines Corporation* v. *Jeff S. Smith*, No. 17 Civ. 5808

Dear Judge Davison:

       In accordance with the Court's instruction in its Addendum Order (the "Addendum") to the Confidentiality Stipulation and Protective Order entered in this action on August 9, 2017, I write on behalf of Plaintiff International Business Machines Corporation ("IBM") to explain why the sealing of certain confidential information in this matter is appropriate under *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

I.    **The Factual Context and the Information IBM Seeks to Seal**

       This action involves an application by IBM for preliminary injunctive relief barring Defendant Jeff Smith from being employed with or performing services for IBM rival Amazon Web Services ("AWS") in a competitive role before Mr. Smith's one-year noncompetition agreement with IBM terminates.  When IBM moved for a temporary restraining order on August 1, IBM also moved for an order sealing its application

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison                                                                                                           2

because it contains confidential IBM information and IBM trade secrets. Judge Seibel granted IBM's sealing motion and sealed the application. (ECF No. 5.)

The parties subsequently entered into the Confidentiality Stipulation and Protective Order, which this Court so-ordered, subject to the Addendum, to govern confidential material produced during pre-hearing discovery by both the parties and AWS. (ECF No. 36.)

In the course of pre-hearing discovery, certain discovery disputes have arisen between IBM and Smith/AWS. Pursuant to the Court's instructions, IBM is submitting a letter to the Court this morning via ECF addressing those disputes. IBM's letter describes and attaches certain information produced by AWS that AWS has designated as confidential. IBM accordingly requests that the Court seal those portions of IBM's letter. Because Smith's/AWS's submissions may also describe or attach materials IBM has designated as confidential or highly confidential information, IBM also seeks to seal any such portions of such submissions.

II.     **The Court May Seal the Information Designated Confidential by IBM (or AWS) Pursuant to *Lugosch***

*Lugosch* holds that "documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment." 435 F.3d at 126. The right of access is based on the need for the federal courts "'to have a measure of accountability and for the public to have confidence in the administration of justice'" because "'professional and public monitoring'" of the courts "'is an essential feature of democratic control.'" *Id.* (quoting *United States* v. *Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) (*Amodeo II*)). *Lugosch* was decided at the summary judgment stage. That is important because summary judgment could result in the "adjudication" of a party's claim, and the Second Circuit held that "'[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'" *Id.* at 121 (quoting *Joy* v. *North*, 692 F.2d 880, 893 (2d Cir. 1982)). As this Court has recognized, *Lugosch*'s application outside of the summary judgment context is therefore unsettled. *See Ello* v. *Singh*, 531 F. Supp. 2d 552, 584 n.31 (S.D.N.Y. 2007) ("The Second Circuit has not yet determined whether a constitutional right of access exists in regard to judicial documents other than those relating to summary judgment.").

Even where *Lugosch* does apply, its presumption of access to judicial documents is a rebuttable one,[1] permitting documents to be sealed where a party can demonstrate that (a) "countervailing factors" outweigh the presumption of public access, 435 F.3d 119–20, or (b) "'if specific, on the record findings are made demonstrating that

---

[1]     IBM assumes for the purposes of this application that the materials it seeks to have sealed constitute "judicial documents" under *Lugosch.*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison                                                                                                    3

closure is essential to preserve higher values and is narrowly tailored to preserve that interest," *id.* (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). IBM's request to seal limited information designated as confidential or highly confidential satisfies the *Lugosch* standards and should be granted because IBM can demonstrate the "countervailing factors" required under the common law and the "higher values" of "the First Amendment framework."  435 F.3d at 124.

III.   **There Is, At Most, A Weak Presumption of Public Access Here**

The *Lugosch* analysis first assesses the weight of the presumption of public access, which is "'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.  Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance."  *Id.* at 119 (quoting *Amodeo II*, 71 F.3d at 1049).

These pre-hearing discovery disputes concern information designated as confidential or highly confidential by the parties and AWS.  IBM's motion for a preliminary injunction concerns Smith's noncompetition agreement with IBM and the extent to which his employment with AWS will violate that agreement.  Sealing limited information in connection with these discovery disputes will not hamper the public's ability to "'assess the correctness of'" the Court's ruling on the preliminary injunction motion.  *Lugosch*, 435 F.3d at 123 (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 101 F.R.D. 34, 43 (C.D. Cal. 1984)).

IV.   **IBM's (and AWS's) Interest In Protecting its Confidential Business Information Outweighs Any Public Interest in Access to That Information**

The next step of the *Lugosch* analysis "balanc[es] competing considerations."  435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1050).  "These competing considerations include, *inter alia*, 'the privacy interests of those resisting disclosure.'"  *Ello*, 531 F. Supp. 2d at 584-85 (quoting *Lugosch*, 435 F.3d at 120).  Any balancing exercise weighs decisively in favor of sealing here.

As IBM executive Arvind Krishna explained in his declaration in support of IBM's motion to seal its preliminary injunction papers, the information IBM seeks to seal contains, among other things, highly confidential product design and development plans, the cost, capabilities, and functions of those products in development, competitive strategies, and other financial information. (Ex. 1.)  IBM keeps this information in strict confidence and limits its distribution even within the Company; it certainly does not disclose such information to the public.  (*Id.*)

There is good and sufficient reason that IBM protects and safeguards this information:  its disclosure could cause IBM significant competitive harm.  A competitor learning the IBM confidential information relevant to these discovery disputes could use that information to develop sales-pitch material to approach current or potential IBM

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison                                                                                                              4

customers and to compete directly against IBM armed with knowledge of IBM's unpublished strategies and internal forecasts.  This is, in fact, the very reason that Mr. Smith promised, in his Noncompetition Agreement and his Agreement Regarding Confidential Information, Intellectual Property and Other Matters, that he would never reveal this information, even after he left IBM's employ.

Courts have sealed information under precisely these circumstances, recognizing that disclosure of confidential information could cause competitive harm, and have done so under both common law and First Amendment analyses.  As this Court has explained, "[c]ourts may deny access to records that are 'sources of business information that might harm a litigant's competitive standing.'" *In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (quoting *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)); *accord Gelb* v. *AT&T Co.*, 813 F. Supp. 1022, 1035 (S.D.N.Y. 1993).  Under the common-law standard, all that is required is "good cause." Fed. R. Civ. P. 26(c)(1).  And, Rule 26(c)(1)(G) recognizes that protection of "a trade secret or other confidential research, development, or commercial information" constitutes "good cause" warranting a protective order.  Under the First Amendment, the presumption of access may be overcome "by a showing that the requested sealing is narrowly tailored to preserve 'higher values.'" *E.E.O.C.* v. *Kelley Drye & Warren LLP*, No. 10 Civ. 655(LTS)(MHD), 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012) (quoting *Lugosch*, 435 F.3d at 120).  That is because "[a]n interference with access to business confidences and trade secrets is not an abridgement of the freedom of speech and of the press protected by the First Amendment." *Standard & Poor's Corp.* v. *Commodity Exch., Inc.*, 541 F. Supp. 1273, 1275 (S.D.N.Y 1982).

Courts have often applied a six-factor test to determine whether trade secret information should be sealed, *see In re Parmalat,* 258 F.R.D. at 244-46 (applying six-factor test), although "business information need not be a 'trade secret' in order to remain sealed or redacted," *Kelley Drye*, 2012 WL 691545, at *3.  Each of these factors supports sealing here:  (i) the information designated confidential is not known outside of IBM; (ii) it is not known widely within IBM; (iii) IBM takes steps to "guard the secrecy of the information"; (iv) the information is valuable to IBM and would be valuable to its competitors; (v) IBM developed the materials for its internal review in order to educate its senior executives; and (vi) the information could not be acquired or duplicated by others.

Thus, courts have sealed corporate strategies and confidential business information like those at issue here.  This Court has applied *Lugosch* and sealed documents containing "highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting." *GoSMiLE, Inc.* v. *Dr. Jonathan Levine, D.M.D., P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011).  In the *IBM* v. *Visentin* case, Chief Judge Preska sealed documents marked IBM Confidential and closed the courtroom when IBM Confidential information was discussed. *See* No. 11 Civ. 399 (LAP), 2011 WL 672025, at *7 (S.D.N.Y. Feb. 16, 2011).  Other courts have sealed similar information. *See, e.g.*, *Brookdale Univ. Hosp. & Med. Ctr., Inc.* v. *Health Ins.*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison                                                                                              5

*Plan of Greater N.Y.*, No. 07-CV-1471(RRM)(LB), 2008 WL 4541014, at *1 (E.D.N.Y. Oct. 7, 2008) (financial data and plans, strategic or long-range plans, internal cost and revenue data); *D'Amour v. Ohrenstein & Brown, LLP*, No. 601418/2006, 2007 WL 4126386, at *21 (S.D.N.Y. Aug. 13, 2007) (law firm's "income tax returns, financial statements and reports"); *Gelb*, 813 F. Supp. at 1035 (internal business strategies and financial information). The same circumstances are present here, and the same outcome is warranted.

V.   **Conclusion**

        IBM respectfully requests that the Court enter an order (i) permitting the parties to submit confidential information under seal in connection with the discovery disputes to be addressed at today's hearing and (ii) sealing those portions of the transcript or opinions that would disclose such confidential information.

        Respectfully submitted,

        Robert A. Atkins

cc (by ECF): Counsel of Record