**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON  (1946-1991)
RANDOLPH E. PAUL   (1946-1956)
SIMON H. RIFKIND   (1950-1995)
LOUIS S. WEISS     (1927-1950)
JOHN F. WHARTON    (1927-1977)

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3183

WRITER'S DIRECT FACSIMILE
(212) 492-0183

WRITER'S DIRECT E-MAIL ADDRESS
ratkins@paulweiss.com

MATTHEW W. ABBOTT, EDWARD T. ACKERMAN, ALLAN J. ARFFA, ROBERT A. ATKINS, DAVID J. BALL, JOHN F. BAUGHMAN, LYNN B. BAYARD, DANIEL J. BELLER, CRAIG A. BENSON, MITCHELL L. BERG, MARK S. BERGMAN, BRUCE BIRENBOIM, H. CHRISTOPHER BOEHNING, ANGELO BONVINO, JAMES L. BROCHIN, RICHARD J. BRONSTEIN, DAVID W. BROWN, SUSANNA M. BUERGEL, PATRICK S. CAMPBELL*, JESSICA S. CAREY, JEANETTE K. CHAN, YVONNE Y. F. CHAN, LEWIS R. CLAYTON, JAY COHEN, KELLEY A. CORNISH, CHRISTOPHER J. CUMMINGS, CHARLES E. DAVIDOW, THOMAS V. DE LA BASTIDE III, ARIEL J. DECKELBAUM, ALICE BELISLE EATON, ANDREW J. EHRLICH, GREGORY A. EZRING, LESLIE GORDON FAGEN, MARC FALCONE, ROSS A. FIELDSTON, ANDREW C. FINCH, BRAD J. FINKELSTEIN, BRIAN P FINNEGAN, ROBERTO FINZI, PETER E. FISCH, ROBERT C. FLEDER, MARTIN FLUMENBAUM, ANDREW J. FOLEY, HARRIS B. FREIDUS, MANUEL S. FREY, ANDREW L. GAINES, KENNETH A. GALLO, MICHAEL E. GERTZMAN, ADAM M. GIVERTZ, SALVATORE GOGLIORMELLA, ROBERT D. GOLDBAUM, NEIL GOLDMAN, CATHERINE L. GOODALL, ERIC GOODISON, CHARLES H. GOOGE, JR., ANDREW G. GORDON, UDI GROFMAN, NICHOLAS GROOMBRIDGE, BRUCE A. GUTENPLAN, GAINES GWATHMEY, III, ALAN S. HALPERIN, JUSTIN G. HAMILL, CLAUDIA HAMMERMAN, GERARD E. HARPER, BRIAN S. HERMANN, MICHELE HIRSHMAN, MICHAEL S. HONG, DAVID S. HUNTINGTON, AMRAN HUSSEIN, LORETTA A. IPPOLITO, BRIAN M. JANSON, JAREN JANGHORBANI, MEREDITH J. KANE,
ROBERTA A. KAPLAN, BRAD S. KARP, PATRICK N. KARSNITZ, JOHN C. KENNEDY, BRIAN KIM, ALAN W. KORNBERG, DANIEL J. KRAMER, DAVID K. LAKHDHIR, STEPHEN P. LAMB*, JOHN E. LANGE, DANIEL J. LEFFELL, XIAOYU GREG LIU, JEFFREY D. MARELL, MARCO V. MASOTTI, EDWIN S. MAYNARD, DAVID W. MAYO, ELIZABETH R. McCOLM, MARK F. MENDELSOHN, WILLIAM B. MICHAEL, TOBY S. MYERSON, CATHERINE NYARADY, JANE B. O'BRIEN, ALEX YOUNG K. OH, BRAD R. OKUN, KELLEY D. PARKER, MARC E. PERLMUTTER, VALERIE E. RADWANER, CARL L. REISNER, LORIN L. REISNER, WALTER G. RICCIARDI, WALTER RIEMAN, RICHARD A. ROSEN, ANDREW N. ROSENBERG, JACQUELINE P. RUBIN, RAPHAEL M. RUSSO, ELIZABETH M. SACKSTEDER, JEFFREY D. SAFERSTEIN, JEFFREY B. SAMUELS, DALE M. SARRO, TERRY E. SCHIMEK, KENNETH M. SCHNEIDER, ROBERT B. SCHUMER, JOHN M. SCOTT, STEPHEN J. SHIMSHAK, DAVID R. SICULAR, MOSES SILVERMAN, STEVEN SIMKIN, JOSEPH J. SIMONS, AUDRA J. SOLOWAY, SCOTT M. SONTAG, TARUN M. STEWART, ERIC ALAN STONE, AIDAN SYNNOTT, ROBYN F. TARNOFSKY, MONICA K. THURMOND, DANIEL J. TOAL, LIZA M. VELAZQUEZ, MARIA T. VULLO, ALEXANDRA M. WALSH*, LAWRENCE G. WEE, THEODORE V. WELLS, JR., BETH A. WILKINSON, STEVEN J. WILLIAMS, LAWRENCE I. WITDORCHIC, MARK B. WLAZLO, JULIA MASON WOOD, JENNIFER H. WU, JORDAN E. YARETT, KAYE N. YOSHINO, TONG YU, TRACEY A. ZACCONE, TAURIE M. ZEITZER, T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

August 14, 2017

**By ECF**

The Honorable Paul E. Davison
United States Magistrate Judge
The Honorable Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

   *International Business Machines Corporation* v. *Jeff S. Smith*, No. 17 Civ. 5808

Dear Judge Davison:

   We represent Plaintiff International Business Machines Corporation ("IBM"). Pursuant to the Court's directive during the August 11 telephone conference, we are submitting this letter to address outstanding discovery disputes between IBM and Defendant Jeff Smith. We will first address the issues IBM has raised with the document productions by Smith and Amazon Web Services ("AWS"), and then the issues Smith has raised with IBM's production of documents. The parties met and conferred by phone on August 11; the issues discussed below are the issues as to which the parties were unable to reach agreement. In addition, although not the subject of our meet and confer, Smith has told us that he intends to seek to preclude the testimony of IBM's forensic expert, and we address that issue below. Finally, we would like to seek the Court's guidance concerning (i) Smith's request that IBM's Chairman, President and Chief Executive Officer accept a subpoena to testify at the preliminary injunction hearing, and (ii) the scheduling of two depositions.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison　　　　　　　　　　　　　　　　　　　　　　　　　　　　2

I. **IBM's Issues with Smith's/AWS's Production**

There are four outstanding issues with respect to Smith's/AWS's document productions.[1]

A. *Smith and/or AWS Have Improperly Redacted a Highly Relevant Document Concerning Smith's Job Responsibilities*

First, Smith has declined to produce an un-redacted version of ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He should be required to produce a fully un-redacted version.

By way of background, AWS initially produced a document entitled ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 1.) As Mr. Jassy testified at his recent deposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ (Ex. 2 at 65:15-17.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Neither document was redacted in any way.

During his deposition, Mr. Jassy testified that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 69:16-18.) Mr. Jassy further testified that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 70:8-71:4.)

Neither Smith nor AWS included the ▮▮▮▮▮▮▮▮ in their initial document productions to IBM, though IBM's requests unquestionably called for the document. We asked counsel for Jassy and Smith at the Jassy deposition for production of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and reiterated that request in an August 10 letter. On Friday, AWS produced the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. 3.) This document is significant. Among other things, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] With respect to any documents in AWS's possession, Smith's/AWS's counsel asked us during our August 11 meet and confer whether we intended to ask this Court to compel AWS to comply with our subpoena or whether we would make a motion to compel in the Western District of Washington. Smith's/AWS's counsel thus appeared to be suggesting that this Court has no power to direct AWS to comply with the subpoena. That suggestion is of a piece with the argument Smith's/AWS's counsel made in opposing our request last week that this Court direct Mr. Jassy to sit for a deposition. In so directing Mr. Jassy, the Court recognized that it was empowered to hold Smith's/AWS's counsel to their representations to us. The same circumstances are present now. Smith's/AWS's counsel told us that they were authorized to accept service of a document subpoena directed to AWS and further told us that they wished to cooperate with us on document production. They now appear to be retreating from that promise by refusing to produce critical documents in response to discovery demands to which they did not specifically object. Under these circumstances, this Court can—and should—enforce AWS's promise.



Honorable Paul E. Davison    3

██████████████████████████████████████████ (*Id.* at 1.) ████████████████████

Significantly, ████████████████ is heavily redacted.  Mr. Jassy's ████████████████████████████████████████████ (*id.*)—one of the central issues on IBM's motion.  Yet, the entire discussion of ███████████████████████████ (*Id.* at 4.)  The redactions also cover ██████████████████ (*Id.*)  And the last two pages are redacted in their entirety.  (*Id.* at 12-13.)

There is no justification whatsoever for any redactions.  It is not privileged, and neither Smith nor AWS has contended otherwise.  Counsel for Smith and AWS raised concerns about the competitive sensitivity of the documents and its contents.  The parties stipulated to, and the Court so-ordered, a Protective Order in this matter for the express purpose of protecting the confidential and competitively sensitive information that is at the heart of this matter, which involves two direct competitors in the Cloud Computing business.  To the extent there is any sensitivity about the substance of the ████████████████████████, the Protective Order permits Smith and/or AWS to designate the document "highly confidential," thereby ensuring that AWS's competitor IBM does not view any of Smith's and/or AWS's confidential information.

Nonetheless, during our August 11 meet and confer, Smith's/AWS's counsel told us that the Protective Order covers only *the parties*' documents, not AWS's, and that the ████████ belonged to AWS, not Smith.  Neither of these contentions is accurate.  The Protective Order explicitly authorizes AWS to designate documents as highly confidential.  As such, even if the document were appropriately considered to be an AWS document, the proper course would be for AWS to produce it with a highly confidential designation.  Moreover, because the document was sent to Smith, it is now in his possession, and he, as a party, should be required to produce it, and to produce it in full with no redactions.

      B.    *Smith Has Failed to Produce the Full<br>           Set of His Communications with AWS*

In our document requests, we asked Smith to produce documents, including text messages, "concerning communications with AWS or anyone acting on AWS's behalf regarding actual or potential employment at AWS, including communications with Andrew Jassy."  Smith's production includes text messages between Smith and Mr. Jassy, but only from May 16, 2017 to June 9, 2017, even though our document requests sought documents "created, generated or received after August 1, 2014 to the present."  We therefore asked Smith to produce all text messages between Smith and Mr. Jassy, including text messages from August 1, 2014 to May 16, 2017 and messages from June 9, 2017 to the present.  We further asked Smith to explain whether

any such messages previously existed but were destroyed or otherwise not preserved to the extent he was unable to produce any additional text communications or communications with AWS.

We asked Smith on Friday to get back to us on this issue; to date we have heard nothing. We would, therefore, ask the Court to direct Smith to produce all such documents or, if none exist, to represent whether he destroyed or failed to preserve any relevant texts or communications with AWS.

C. *AWS Has Failed to Produce Documents Concerning Competition with IBM*

In its subpoena to AWS, IBM asked AWS to produce "[a]ll documents concerning competition with IBM." As noted, Smith's/AWS's counsel agreed to cooperate with respect to discovery. AWS made no specific objection to that document request and, before last Friday, never advised us that they did not intend to look for any responsive documents. Nonetheless, AWS produced *no documents* responsive to this request.

Documents reflecting AWS competition with IBM are critical to the core issues in this case. At the TRO hearing, Smith expressed the view that AWS and IBM are not in fact competitors. (Ex. 4 at 24:3-24.) In response, Judge Seibel posted this question: "When we go to discovery in this case, they [IBM] are not going to find a single document in the possession of Amazon Web Services where anybody at Amazon Web Services talks about or wonders or expresses a concern or curiosity about what IBM is doing?" (*Id.* at 25:2-6.) Smith thus put at issue whether IBM and AWS are in fact competitors, and Judge Seibel appropriately recognized that AWS's views as to IBM's competitiveness are relevant to the parties' dispute, and would be a proper subject of pre-hearing discovery.

During our meet and confer, Smith/AWS did not articulate any meaningful reason why AWS should not produce responsive documents. Instead, Smith/AWS claimed that the request was burdensome. We asked AWS's counsel several times—repeatedly—if they would be willing to negotiate the scope of this request in any way at all, and each time we were met with stonewalling. We also asked if Smith/AWS could identify a limited number of custodians or even a central repository with memoranda reflecting AWS's views of IBM as a competitor. Smith's/AWS's counsel were unwilling to engage in any discussion as to the scope of this request and declined to produce anything responsive to it.

Smith/AWS also said that AWS could not produce any documents responsive to this request because, in their view, it calls for disclosure of confidential AWS cloud computing strategy. The Protective Order addresses any such concern.

Smith/AWS also appeared to suggest that documents in AWS's files responsive to this request would be duplicative of Mr. Jassy's testimony

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison 5

 That will not suffice.  Naturally, Mr. Jassy  We are entitled to take discovery to test AWS's assertion about the competition between AWS and IBM, one of the main issues the Court must consider on the preliminary injunction motion.

In short, Smith should be directed to conduct a reasonable search for documents reflecting AWS competition with IBM in cloud computing.

D. *AWS Has Failed to Produce Documents Concerning the Names and Subject Matters of Executive Teams Smith Will Participate in at AWS*

In its subpoena to AWS, IBM asked AWS to produce "[d]ocuments sufficient to show the names of, and general subject matters discussed by, any and all committees, teams, and/or groups of AWS executives and/or employees Smith is expected to participate in, including any and all regular or specific meetings with Andrew Jassy."  As with the preceding request, Smith's/AWS's counsel agreed to cooperate, did not make a specific objection to this request and, before last Friday, never advised us that they did not intend to look for any responsive documents.  Nonetheless, AWS has produced nothing on this issue.

These documents are highly relevant to the parties' dispute.  Smith represented at the TRO hearing that his role at AWS would be "very scoped . . . in a narrow area of cloud services" and would "keep[] him out of sales" and "keep[] him out of pricing."  (*Id.* at 8:12-17.)  Mr. Jassy's testimony at his deposition.  Mr. Jassy testified that  (Ex. 2 at 43:4-10.)  (*Id.* at 38:22-39:3; 45:18-24.)  (*Id.* at 45:4-16; Ex. 5 at 1.)

Given Smith's  —we are entitled to documents showing what teams Smith will be part of and what those teams will be discussing.

During our meet and confer with Smith's/AWS's counsel, we asked if AWS would be willing to produce any documents responsive to this request.  Smith's/AWS's counsel did *not* appear to take the position that this request was burdensome or irrelevant.  To date, though, we have received no documents responsive to this request.  Accordingly, we request that AWS be directed to produce responsive documents.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison      6

II. **Smith's Issues with IBM's Production**

As we understand it, Smith has two main outstanding issues with IBM's production.

A. *Smith Has Advanced No Justification for His Demand That IBM Search the Emails of Its Chairman, President and Chief Executive Officer*

First, Smith has demanded that IBM search the email files of its Chairman, President and Chief Executive Officer, Virginia M. Rometty. Smith has advanced no justification for that demand—which we believe is a transparent attempt to harass—and none exists.

In response to Smith's document requests, IBM promptly engaged in an appropriate and reasonable collection, search, review, and production of responsive documents. That effort resulted in the identification of a number of IBM personnel with material and unique knowledge of and involvement in the parties' dispute. Those individuals' files were then searched by using targeted search terms designed to home in on relevant documents. That exercise has generated more than **_14,000 pages_** of documents, all collected, reviewed and produced over barely two weeks. In the context of these expedited and preliminary proceedings, IBM's efforts in this regard were undertaken in good faith, were proportionate to the needs of the case, and were appropriate under the circumstances.

Nonetheless, Smith has complained that IBM did not search the email files of Mrs. Rometty, its Chairman, President and Chief Executive Officer. Smith, however, has provided no legitimate basis that would require IBM to do so. The genesis of this issue is an email that Smith produced to us. Smith sent that email—in which he explained his departure from IBM—to Mrs. Rometty using his personal Gmail account. We explained to Smith that we did not produce the email because we had not searched Mrs. Rometty's email files and that Smith had the email in question in any event, so there was no need for us to search for it.

In response, Smith changed his story. For the first time, Smith told us that he believed Mrs. Rometty had forwarded the email to another IBM executive, and asked us to produce the forwarded version. At the same time, Smith announced for the first time that he believed Mrs. Rometty "made the determination to seek to preclude [him] from working for [AWS] and that she did so for *illegitimate and improper reasons*." (emphasis added). When we asked Smith's counsel to explain the basis for that belief, we were told that Smith had learned that Mrs. Rometty had *orally* told another IBM executive what her reason was for seeking to enforce Smith's non-compete and that, according to Smith, that reason was "improper." We repeatedly asked Smith's counsel to tell us what that supposed reason was so that we could understand the basis for his request; he declined to do so.

Honorable Paul E. Davison                                                              7

Smith's refusal to engage with us as to the basis for his demand that we search the email files of IBM's Chairman, President and Chief Executive Officer should end this inquiry.  Or, he should simply tell us what the purported "reason" is he claims IBM is pursuing this matter so that the parties can have a good faith discussion about it.  In any event, whatever "motive" Smith believes IBM has for seeking to enforce his non-compete agreement is not relevant to the issues to be adjudicated at the hearing.  And it certainly in no way warrants searching the emails of the company's Chairman, President and Chief Executive Officer, who has no unique knowledge of those issues that Smith cannot obtain from either all of the documents we have produced or other IBM witnesses.  Smith's request should be denied.

   B. *Smith's Demand That IBM Search for Evidence of "Disloyalty" by Other IBM Employees Should Be Rejected*

Second, Smith has demanded that IBM search the files of *four more* document custodians for a period of eight months.  This demand should be rejected.

Specifically, Smith has relied on communications he evidently had with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from August 2016 through March 2017.  According to Smith, in those exchanges ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Smith claims to have forwarded ▮▮▮▮ emails or summaries of the emails to three other IBM executives.  Smith has now complained that IBM did not produce these emails, and has asked us to search the email files of ▮▮▮▮▮▮ and these three other executives for an eight-month period because, in Smith's view, "the communications are highly relevant to IBM's allegations that Mr. Smith committed acts of disloyalty and that he did not act in the best interests of IBM."

Stated in simple terms, Smith seems to think that if he can find evidence that other IBM executives shared his views on particular aspects of IBM's business, including cloud computing, that would help him defend against what he perceives to be IBM's allegation that Smith was disloyal.  Smith misapprehends IBM's position.  The issue is not whether other IBM executives or employees *internally expressed* similar views of IBM products.  The issue is that Smith repeatedly (and covertly) shared his insider views of IBM products and views of IBM personnel **_with the CEO of AWS_**, while serving as one of the highest-ranking executives at IBM.  That ▮▮▮▮▮▮▮▮▮▮ may have shared his thoughts about an IBM product with a fellow IBM executive does not explain or excuse Smith's disparaging and disloyal comments to one of IBM's biggest competitors.

As noted, IBM undertook a reasonable and appropriate search, and it has no obligation to search the files of executives who have nothing to do with the dispute here.  That is what Smith is now asking IBM to do.  His request, which is as transparent a fishing expedition as any, should be denied.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison     8

### III.     Smith's Request to Preclude IBM's Forensic Expert from Testifying

Smith advised us after close of business this past Friday that he would seek to preclude the testimony of IBM's forensic expert, Stroz Friedberg. The reason Smith proffered to us for his preclusion request is that IBM supposedly did not produce documents related to Stroz Friedberg's forensic analysis of Smith's iPhone and iPad. Smith has never sought to discuss this issue with us. Had he done so, we would have explained that he is mistaken. We will do so now.

IBM's counsel at Paul, Weiss retained Stroz Friedberg to assist it in its representation of IBM in this matter. In particular, Stroz Friedberg was asked to perform a forensic analysis of Smith's iPhone and iPad to determine what, if any, information they contained. As reflected in the declaration of a Stroz Friedberg employee submitted today to Judge Seibel in support of IBM's preliminary injunction motion, Stroz Friedberg concluded that Smith's iPhone and iPad had been wiped. That declaration, and its exhibits, are now in Smith's possession, and there are no non-privileged documents concerning Stroz Friedberg that IBM has not produced or appended to that declaration.

So, IBM has not, as Smith suggests, failed to produce any responsive, non-privileged Stroz Friedberg documents: there is simply nothing else to produce. And, Smith has already indicated his intention to depose the Stroz Friedberg declarant. Under these circumstances, there is no basis for precluding Stroz Friedberg's testimony.

### IV.     Other Issues for the Court's Direction

There are two other issues we wish to bring to the Court's attention.

First, on Thursday, Smith advised us that he intends to subpoena Mrs. Rometty to testify at the preliminary injunction hearing on August 24, and asked us if we would voluntarily produce Mrs. Rometty or whether service of a subpoena compelling her attendance would be necessary.

While we are prepared to accept service of a subpoena to obviate any need for a process server, we do intend to object to any effort by Smith to compel Mrs. Rometty to testify. Apart from the fact that Mrs. Rometty will be unavailable next week and out of the country on August 24, we believe that the demand that she appear in Court is just intended as harassment. Therefore, we would ask the Court for guidance as to how and when to raise this issue, whether by way of a motion to quash a subpoena for Mrs. Rometty (which motion we are prepared to file promptly upon receiving such subpoena) or by objecting to a subpoena and opposing any motion to compel Smith may bring.

Second, there may be an issue concerning the scheduling of two depositions, one of IBM witness John Considine and the other of Smith's proffered expert, Bernard Golden.

With respect to Mr. Considine (the General Manager of Cloud Infrastructure Services at IBM), we told Smith last week that he could be available to

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Paul E. Davison 9

testify in New York on August 17. Smith nevertheless sent us a notice for Mr. Considine's deposition purporting to set it for August 18 in New York. Mr. Considine lives and works in Boston and will be in Boston on August 18.

With respect to Mr. Golden, we asked Smith last week to make him available for a deposition in New York on August 17. Smith has not told us whether Mr. Golden is for any reason unavailable on that date; instead, Smith told us Mr. Golden could be deposed on August 22. We have sent Smith a notice for Mr. Golden's deposition on August 17 but have not heard back from Smith as to whether Mr. Golden will appear for his deposition on that date.

*   *   *

We thank the Court for its attention to these matters and will be prepared to answer any questions the Court may have at today's conference.

Respectfully submitted,

Robert A. Atkins

cc (by ECF): Counsel of Record