UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>            Plaintiff,<br><br>    v.<br><br>JEFF S. SMITH,<br><br>            Defendant. | Case No. 7-17-cv-05808 (CS) (PED) |

## DEFENDANT JEFF SMITH'S SUPPLEMENTAL
## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

MORGAN, LEWIS & BOCKIUS, LLP

Michael L. Banks (*pro hac vice*)
Richard G. Rosenblatt (*pro hac vice*)
Sarah E. Bouchard (*pro hac vice*)
Brandon J. Brigham (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

SCHULTE ROTH & ZABEL LLP

Ronald E. Richman
Max Garfield
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for Defendant Jeff Smith*

I.  **INTRODUCTION**

Defendant Jeff Smith ("Mr. Smith") hereby petitions this Court to vacate the Temporary Restraining Order ("TRO") currently in effect and deny Plaintiff International Business Machines Corporation's ("IBM") Motion for a Preliminary Injunction or, in the alternative, to preclude IBM from presenting evidence at the preliminary injunction hearing because of its unclean hands.  Yesterday, on August 15, 2017, it was confirmed that Plaintiff IBM knowingly made – and has not cured -- a critical and continuing misrepresentation to the Court and counsel concerning the supposed basis for IBM's claims.  Specifically, IBM has continually represented that Mr. Smith improperly "wiped" his IBM-issued mobile devices, purportedly to conceal Mr. Smith's efforts to misappropriate confidential information from IBM and share the information with IBM's competitor, Amazon Web Services, Inc. ("AWS").  This representation to the Court undoubtedly led to, or at the very least contributed significantly to, this Court's entry of a TRO restricting Mr. Smith from engaging in activities at AWS, other than in  "listen and learn mode."

Yesterday, after repeated requests from Mr. Smith's counsel, IBM produced its own information technology ("IT") policy that establishes that Mr. Smith's deletion of information on his devices was perfectly proper.  Indeed, the policy instructs employees on how to wipe their devices to return the devices to their factory settings, acknowledging that doing so will erase all data from the devices.  In other words, Mr. Smith's returning of his mobile devices wiped of data was precisely what he was supposed to do in accordance with IBM policy.  Nonetheless, IBM represented to this Court that his having done so somehow reflected that Mr. Smith was so untrustworthy that he should not be allowed to go to work for AWS.  IBM then defamed Mr. Smith when its media spokesperson contributed to various new stories indicating that Mr. Smith acted improperly in wiping his IBM-issued devices.  Accordingly, because IBM has come to this Court with unclean hands, the Court should vacate the TRO and deny IBM's request

for a preliminary injunction. In the alternative, this Court should preclude IBM from presenting evidence in support of its claims at the preliminary injunction hearing on August 21 and 24, 2017.

II. **SUPPLEMENTAL PROPOSED FINDINGS OF FACT**

1. Plaintiff IBM continually misrepresented critical facts concerning Mr. Smith's departure from IBM.

2. In the Complaint and at the TRO hearing, IBM represented to the Court and counsel that Mr. Smith inappropriately wiped his IBM-issued phone and tablet, purportedly to provide information to a competitor and his new employer, AWS. *See* Compl. ¶ 3 ("Confirming that he cannot be trusted to protect and preserve IBM's trade secrets, Smith wiped his company-issued phone and tablet, making it impossible for IBM to detect other communications with Jassy or to determine if he transferred any other IBM information."); TRO Hearing Transcript at 33:10-25, 44:8-46:3.

3. Counsel for Mr. Smith explained at the TRO hearing that IBM shut down Mr. Smith's computers in March 2017, immediately after Mr. Smith turned in the computers. Thereafter, Mr. Smith returned his phone and tablet in accordance with IBM policy. TRO Hearing Transcript at 33:10-25. At that hearing, counsel for IBM repeatedly represented that Mr. Smith had acted improperly in "wiping" his devices. ("MR. RICHMAN: When Mr. Smith first announced to IBM that he was going to leave and go to Amazon, they took his computers and they looked – they examined them, and they were not wiped clean at that point in time. Now, he did wipe clean his computer because he had personal information on it. That's after IBM reviewed it. . . . THE COURT: Is that correct, Mr. Atkins? You did make the wiping of the devices seem very sinister. MR. ATKINS: When he resigned in May and turned over the

2

devices, they had been wiped clean. . . ."); *id.* at 44:12-16 ("He was an iPad and iPhone user. He did not turn in the iPad or the iPhone until May. So, those – neither of those devices, which, which he used prolifically were reviewed prior to the time he left and prior to the time they were wiped.").

4. Relying upon the representations, this Honorable Court, in several instances made note of Mr. Smith's purportedly improper "wiping" of his devices. *Id.* at 32:21-34:17 (THE COURT: "there also is an allegation that when he returned his company phone and laptop he wiped them clean, suggesting that there was something there he did not want his employer to see."); *id.* at 43:25-44:19 (relying on IBM's counsel's representations in concluding that "now it looks – now it looks sinister again. . . .")**.**

5. However, the Court also expressed concern that IBM may have overreached in its description of Mr. Smith's return of his IBM-issued electronic devices. *Id.* at 34:13-17 ("And, also, I don't think it was the wisest move on your part to leave that fact out of your presentation, because it doesn't look nearly as sinister as you tried to make it look.").

6. Based on the misrepresentations by IBM in its Complaint and at the TRO hearing, the Court permitted Mr. Smith to work for AWS, but subject to several restrictions, including that Mr. Smith is to be in "listen and learn" mode. TRO Hearing Transcript at 59:17-25.

7. During expedited discovery, Mr. Smith requested that IBM produce documents reflecting its policy concerning the return of IBM-issued electronic devices. *See* Mr. Smith's First Set of Requests for Expedited Production of Documents ¶ 6, attached as Ex. 1 ("Documents sufficient to identify your policies, practices, and procedures concerning the use by IBM employees of personally owned electronic devices (e.g., smart-phone devices or tablets) for IBM business purposes, including but not limited to the receipt, storage and sending of IBM enterprise

3

e-mail or personal e-mail and return of those devices following separation from employment."). None were produced.

8. Press reports across the globe reported IBM's allegations about Mr. Smith's wiping of devices, purportedly in an inappropriate manner. *See* Allie Coyne, IBM Sues Former CIO Jeff Smith over Move to AWS (Aug. 9, 2017), https://www.itnews.com.au/news/ibm-sues-former-cio-jeff-smith-over-new-aws-gig-470436 ("It also claims Smith 'cannot be trusted' to preserve sensitive IBM information because he had shared inside information with AWS boss Andy Jassy whilst employed at IBM, and had wiped his company-issued phone and tablet to prevent other communications from being detected."); Simon Sharwood, IBM CIO Leaves for AWS – and Big Blue Flings Sueball to Stop Him (Aug. 9, 2017), https://www.theregister.co.uk/2017/08/09/ibm_sues_former_cio_who_wants_to_work_for_aws/ ("The complaint also alleges Smith has already revealed some information to AWS CEO Andrew Jassy, violated directives not to retain presentations about IBM's new cloud, and then wiped his company-issued phone and tablet before leaving the IT giant, 'making it impossible for IBM to detect other communications with Jassy or determine if he transferred any other IBM information.'"); Joseph Tsidulko, IBM Sues CIO Jeff Smith to Stop Him Moving to Amazon Web Services (Aug. 9, 2017), https://www.crn.com.au/news/ibm-sues-cio-jeff-smith-to-stop-him-moving-to-amazon-web-services-470429 ("Smith 'wiped' his IBM-issued phone and tablet to prevent IBM from discovering secret communications with the AWS CEO, the lawsuit alleges"); Callum Rivett, Former IBM CIO Jeff Smith Wants to Join Amazon, but Is Threatened with Lawsuit (Aug. 10, 2017), http://www.gigabit.net/cloud-computing/former-ibm-cio-jeff-smith-wants-join-amazon-threatened-lawsuit ("Smith also reportedly 'wiped his company phone and tablet' before he left the firm, meaning that IBM had no way of detecting if he was in

4

communication with Jassy during his departure.").

9. Mr. Smith has knowledge that the written policy was in the hands of Terri Wood, IBM's in-house counsel, last week.[1]

10. Nonetheless, in support of its Proposed Findings of Fact and Conclusions of Law submitted on August 14, 2017, IBM relied on a forensic expert concluding that Mr. Smith wiped his devices. *See* Declaration of Kevin Faulkner ¶¶ 26-27 (describing the forensic analysis IBM requested on Mr. Smith's devices); *see also* Plaintiff IBM's Proposed Findings of Fact and Conclusions of Law in Advance of the Hearing for a Preliminary Injunction ¶ 71 ("At the time of his resignation, IBM asked Smith to turn in the phone and tablet devices that IBM had provided to him. (Compl. ¶ 3.) Before doing so, Smith reset the devices so that they were wiped of all data. (*Id.*) By wiping these devices, Smith ensured that IBM could not determine whether Smith had used these devices to download or transfer any confidential information, or analyze the extent to which Smith had communicated with AWS.").

11. After IBM continued to rely on this false narrative, counsel for Mr. Smith repeatedly requested the policy on IBM return of devices. Bouchard Decl. ¶ 6. We were ignored. On the eve of the deposition of one of IBM's key witnesses, the policy was produced that verifies Mr. Smith's version of events that wiping is a current IBM policy and Mr. Smith's actions prior to departing IBM were consistent with the IBM-mandated protocols.

12. Indeed, the policy states that, prior to returning devices, an employee must dissociate his or her account "and delete all personal settings." *See* IBM IT Policy at 1, attached as Ex. 2. The policy provides instructions on how to "dissociate your account and return the [device] back to factory settings." *Id.* By the following the instructions, the employee "will

---

[1] Mr. Smith can be deposed to testify in support of this fact, if necessary.

completely erase [the] device." *Id.* at 2.

13.     IBM has misled this court, defamed Mr. Smith in the press worldwide, and is denying him from meaningful work simply because he wanted to leave to go to an employer of his choosing. IBM's tactics have been not only anticompetitive, but false and misleading.

**III.    SUPPLEMENTAL PROPOSED CONCLUSIONS OF LAW**

1.     Courts routinely deny requests for preliminary injunctions where the party seeking the injunction has unclean hands. *See Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 534 (S.D.N.Y. 2009) (plaintiff's "own unclean hands . . . preclude the equitable relief of a preliminary injunction"); *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 354–56 (S.D.N.Y. 2008) (denying request for preliminary injunction where plaintiff had unclean hands); *Haagen-Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 76 (S.D.N.Y. 1980) (same).

2.     Courts have applied the doctrine of unclean hands in denying employer's requests for preliminary injunctions in cases, such as this, where the employer is seeking to enforce a non-competition agreement. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Callahan*, 265 F. Supp. 2d 440, 443 (D. Vt. 2003) (denying preliminary injunction to enforce employer's non-competition agreement because of the employer's unclean hands); *Salomon Smith Barney Inc. v. Vockel*, 137 F. Supp. 2d 599, 604 (E.D. Pa. 2000) (denying the employer's motion for a preliminary injunction where the employer had "not shown that it has come into this court with clean hands. In fact, the opposite has been established. Accordingly, as a court sitting in equity, we will not aid a wrongdoer").

3.     Under this doctrine, "a party will be denied equitable relief where it has itself acted unconscionably in relation to the matter at issue to the detriment of the other party." *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 326 (S.D.N.Y. 1997) (citation omitted); *see*

6

*also Procter & Gamble Co.*, 574 F. Supp. 2d at 354-56 ("The equitable doctrine of 'unclean hands' 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'") (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945)).

4. IBM's deceptive conduct meets this standard. IBM accused Mr. Smith of engaging in unlawful conduct by wiping his devices to conceal supposed misappropriation of IBM's confidential information. Now, based on IBM's own IT policy, it is clear that Mr. Smith did nothing wrong and that, rather, IBM has engaged in deceitful conduct. IBM defamed Mr. Smith and made continued misrepresentations to this Court knowing that Mr. Smith adhered to IBM's policy in wiping his devices upon his departure from IBM.

5. Courts have sanctioned parties for making such misrepresentations to the Court. *See Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 145 n.1 (2d Cir. 2001) (noting that prior lawsuit was "discontinued after a District Judge at conference advised Playgirl that it was subject to sanctions for bringing an action in bad faith and with unclean hands."); *see also Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258, 262 (D.D.C. 2009), *aff'd*, 628 F. Supp. 2d 84 (D.D.C. 2009) (granting sanctions against plaintiff where plaintiff refused to produce key documents and made misrepresentations to the court). Indeed, courts have entered default judgment against the offending party as a sanction for misconduct considering the following factors:

> (1) a determination that the errant party's behavior has severely hampered the other party's ability to present his case; (2) the prejudice caused to the judicial system when the party's misconduct has put an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay; and (3) the need to sanction the conduct that is disrespectful to the court and to deter similar misconduct in the future."

7

*Id.* (citation and quotations omitted).

6. All of those factors are present here. Mr. Smith has been prejudiced in that IBM delayed producing its IT policy until after this Court issued a TRO and permitted Mr. Smith to continue gainful employment only if he complied with several restrictions. This Court relied on IBM's misrepresentations in issuing the TRO. By vacating the TRO and denying IBM's request for a preliminary injunction or precluding IBM from presenting evidence at the preliminary injunction hearing, this Court will deter future litigants from making similar misrepresentations in judicial proceedings.

7. Accordingly, because IBM has come to this Court with unclean hands, the Court vacates the TRO and denies IBM's request for a preliminary injunction. Alternatively, IBM is precluded from presenting evidence at the preliminary injunction hearing.

Dated: August 16, 2017
New York, New York

MORGAN, LEWIS & BOCKIUS, LLP

*/s/ Sarah E. Bouchard*
Michael L. Banks (*pro hac vice*)
Richard G. Rosenblatt (*pro hac vice*)
Sarah E. Bouchard (*pro hac vice*)
Brandon J. Brigham (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

SCHULTE ROTH & ZABEL LLP

Ronald E. Richman
Max Garfield
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for Defendant Jeff Smith*