**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

                 Plaintiff,

      v.

JEFF S. SMITH,

               Defendant.

17 Civ. 5808(CS)(PED)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH
THE SUBPOENA SERVED ON VIRGINIA M. ROMETTY AND FOR A PROTECTIVE
ORDER PRECLUDING HER TESTIMONY**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Robert A. Atkins
Lorin L. Reisner
Gregory F. Laufer
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Plaintiff*
*International Business Machines Corporation*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................... 4

ARGUMENT ......................................................................................................... 5

    I.     LEGAL STANDARD................................................................................. 5

         A.    Courts Quash Subpoenas and Preclude Discovery Requests That Impose Undue Burden .............................................................. 5

         B.    Courts Apply Heightened Scrutiny to Requests to Examine Top-Ranking Corporate Executives ................................................. 6

    II.    THE COURT SHOULD QUASH THE SUBPOENA ......................................... 9

         A.    Mrs. Rometty Does Not Have Unique Knowledge of Material Facts ........................................................................................... 9

         B.    Any Relevant Information Mrs. Rometty Has Can Readily Be Obtained Through Other Witnesses ......................................... 13

         C.    Mrs. Rometty's Declaration Establishes that She Does Not Have Unique Knowledge ........................................................... 13

         D.    Requiring Mrs. Rometty to Testify Would Create A Significant Burden ...................................................................... 14

         E.    Smith Seeks Mrs. Rometty's Testimony For An Improper Purpose ........ 15

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alex & Ani, Inc.* v. *MOA Intern. Corp.*,
No. 10 Civ. 4590, 2011 WL 6413612 (S.D.N.Y. Dec. 21, 2011)...........................6

*Amazon.com, Inc.* v. *C.I.R.*,
108 T.C.M. (CCH) 588 (T.C. 2014) ..................................................................8

*In re Application of Operacion y Supervision de Hoteles, S.A.*,
No. 14 Misc. 82, 2015 WL 82007 (S.D.N.Y. Jan. 6, 2015).................................5

*Arkwright Mut. Ins. Co.* v. *Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*,
No. 90 Civ. 7811, 1993 WL 34678 (S.D.N.Y. Feb. 4, 1993) .................................13

*Baird* v. *Koerner*,
279 F.2d 623 (9th Cir. 1960) ..............................................................................12

*Bey* v. *City of New York*,
No. 99 Civ. 3873, 2007 WL 1893723 (S.D.N.Y. June 28, 2007)...........................7

*Bouchard* v. *New York Archdiocese*,
No. 04 Civ. 9978, 2007 WL 2728666 (S.D.N.Y. Sept. 19, 2007) ......................6, 8

*Chevron Corp.* v. *Donziger*,
No. 11 Civ. 0691, 2013 WL 1896932 (S.D.N.Y. May 7, 2013)..................8, 14, 16

*Concord Boat Corp.* v. *Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) ...........................................................................5

*Consol. Rail Corp.* v. *Primary Indus. Corp.*,
Nos. 92 Civ. 4927 & 92 Civ. 6313, 1993 WL 364471 (S.D.N.Y. Sept. 10,
1993) .................................................................................................................8, 13

*Cresswell* v. *Prudential-Bache Sec. Inc.*,
105 F.R.D. 64 (S.D.N.Y. 1985) .........................................................................10

*Deluca* v. *Bank of Tokyo-Mitsubishi UFJ*,
No. 05 Civ. 639, 2007 WL 2589534 (S.D.N.Y. Aug. 30, 2007) ......................6, 13

*Diesel Props S.r.L* v. *Greystone Bus. Credit II LLC*,
No. 07 Civ. 9580, 2008 WL 5099957 (S.D.N.Y. Dec. 3, 2008)........................6, 13

*Digital Equip. Corp.* v. *Sys. Indus., Inc.*,
108 F.R.D. 742 (D. Mass. 1986)........................................................................10

*Estee Lauder Companies Inc.* v. *Batra*,
    430 F. Supp.2d 158 (S.D.N.Y. 2006) .................................................................11

*In re Fitch, Inc.*,
    330 F.3d 104 (2d Cir. 2003) .............................................................................5

*Gen. Star Indem. Co.* v. *Platinum Indem. Ltd.*,
    210 F.R.D. 80 (S.D.N.Y. 2002) ..............................................................7, 14, 16

*Guan Ming Lin* v. *Benihana National Corp.*,
    No. 10 Civ. 1335, 2010 WL 4007282 (S.D.N.Y. Oct. 5, 2010) ....................7

*Harris* v. *Comp. Assoc. Int'l*,
    204 F.R.D. 44 (E.D.N.Y. 2001) ......................................................................7

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    No. CIV.A. 05-441-JJF, 2009 WL 2030967 (D. Del. July 7, 2009).............12

*Kirschner* v. *Klemons*,
    No. 99 Civ. 4828, 2005 WL 1214330 (S.D.N.Y. May 19, 2005)...................5

*Mendell In Behalf of Viacom, Inc.* v. *Gollust*,
    909 F.2d 724 (2d Cir. 1990) ..........................................................................10

*Plew* v. *Ltd. Brands, Inc.*,
    No. 08 Civ. 3741, 2012 WL 379933 (S.D.N.Y. Feb. 6, 2012) .................8, 15

*Rayfield Aviation, LLC* v. *Lyon Aviation, Inc.*,
    No. 1:11CV274, 2012 WL 3095332 (M.D.N.C. July 30, 2012) ..................10

*Retail Brand Alliance, Inc.* v. *Factory Mut. Ins. Co.*,
    No. 05 Civ. 1031, 2008 WL 622810 (S.D.N.Y. Mar. 7, 2008) ....................7

*Rhone-Poulenc Rorer Inc.* v. *Home Indem. Co.*,
    No. CIV. A. 88-9752, 1991 WL 183842 (E.D. Pa. Sept. 16, 1991) ...........10

*Select Comfort Corp.* v. *Tempur Sealy Int'l, Inc.*,
    No. 13 Civ. 2451, 2015 WL 12803579 (D. Minn. Apr. 7, 2015) ...............12

*Six West Retail Acquisition, Inc.* v. *Sony Theatre Mgmt. Corp.*,
    203 F.R.D. 98 (S.D.N.Y.2001) ...............................................................14, 16

*In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*,
    No. MDL 1428, 2006 WL 1328259 (S.D.N.Y. May 16, 2006)....................6

*Thomas* v. *Int'l Bus. Machines*,
    48 F.3d 478 (10th Cir. 1995) ...........................................................................7

*Tri–Star Pictures, Inc.* v. *Unger*,
    171 F.R.D. 94 (S.D.N.Y.1997) ...................................................................14, 16

*In re Weatherford Int'l Sec. Litig.*,
    No. 11 Civ. 1646, 2013 WL 5762923 (S.D.N.Y. Oct. 24, 2013) .............................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 .........................................................................................................6, 12

Fed. R. Civ. P. 45(d)(3)(A)(iii) ...................................................................................5, 12

Plaintiff International Business Machines Corporation ("IBM") respectfully submits this memorandum in support of its motion under Federal Rules of Civil Procedure 45(d) and 26(c)(1) to quash the subpoena served by Defendant Jeff Smith ("Smith") on Virginia M. Rometty, IBM's Chairman, President, and Chief Executive Officer, and for a protective order precluding her testimony.

## PRELIMINARY STATEMENT

Last night at 10:15 p.m., Defendant Smith sent a subpoena for Virginia M. Rometty, the Chairman, President, and Chief Executive Officer of IBM, to testify at the preliminary injunction hearing on Monday, August 21. The subpoena should be quashed because (1) as Smith and the Court were informed this Monday (August 14) at 9:00 a.m., Mrs. Rometty is unavailable and out of the country next week; and (2) Mrs. Rometty has no unique or superior knowledge relevant to the matters at issue on the pending motion for a preliminary injunction regarding Smith's proposed employment at Amazon Web Services ("AWS").

The subpoena is pure harassment, procedurally and substantively. On Thursday August 10, the parties exchanged witness lists and Smith stated his intention to subpoena Mrs. Rometty not for a deposition, but to appear at the hearing on August 24. On Monday August 14, in a letter to Magistrate Judge Davison regarding several discovery disputes, IBM notified Smith and the Court that "Mrs. Rometty will be unavailable next week and out of the country on August 24," and that "the demand that she appear in Court is just intended as harassment." ECF No. 42, at 8. At the hearing before Judge Davison at noon that same day (Monday, August 14), counsel for IBM highlighted the issue again, and the Court noted that "if they [Smith and AWS] serve a trial subpoena," IBM then should make a motion to quash. (Declaration of Pietro J. Signoracci ("Signoracci Decl.") Ex. 4, at 33:16–20.)

After that, silence.  No subpoena.  No request to depose Mrs. Rometty due to her announced unavailability next week—a request we would have opposed, but with time for the Court to rule.  Nothing, until the last minute subpoena last night, one business day before the hearing and for a day (August 21) Smith has known all week Mrs. Rometty is not available.

Even if Smith had not deliberately delayed, and even if he had given adequate notice, he would have no legitimate basis to compel Mrs. Rometty to testify.  Mrs. Rometty is the Chairman and CEO of a corporation operating in over 170 countries with over 380,000 employees.  She is not the counterpart of AWS's CEO, Andrew Jassy, the leader of an Amazon.com subsidiary who was deposed because he too is unavailable next week and is a key witness whose testimony is being advanced by Smith in his defense.  In terms of corporate structures, Mrs. Rometty occupies a position more like Jeff Bezos, the Chairman and CEO of Amazon, who has not been deposed and who is not being called as a witness.  Nevertheless, Smith has been permitted to explore the relevant facts with several senior IBM executives who do have knowledge of the relevant facts, who are Mr. Jassy's counterparts, and who will testify on behalf of IBM at the hearing.  IBM is making available for deposition Smith's direct supervisor (IBM Senior Vice President James Kavanaugh); the head of the IBM Technology Team on which Smith served (IBM Senior Vice President Arvind Krishna); the Manager of Project Genesis, IBM's product development plan for competing against AWS (John Considine); and one of Smith's own direct reports and his successor as Chief Information Officer of IBM (Fletcher Previn).

Therefore, IBM is not depriving Smith of access to the testimony of IBM's senior executive leadership.  Mrs. Rometty is being targeted not for her knowledge, but because of her position.  That should not be permitted.  Mrs. Rometty was ***not*** Smith's direct supervisor, is ***not***

the person most knowledgeable about the IBM trade secrets and sensitive information that Smith knows, and does **not** have direct knowledge of the role that he would have at AWS.

Smith's attempt to require Mrs. Rometty's testimony must be called out for what it is: an effort to harass IBM's Chairman and CEO. It may be an effort to get even with IBM, following the Court's decision requiring AWS's CEO, Andy Jassy, to appear for a deposition. But there is no equivalence. Unlike Mrs. Rometty, however, Mr. Jassy is a critical witness in this case, whose testimony is being advanced by Smith in his defense, and who has unique knowledge of facts relevant to the issues before the Court. Mr. Jassy is the person who recruited Mr. Smith from IBM to AWS, who designed Mr. Smith's proposed role at AWS, and is the person who would be Mr. Smith's direct supervisor. While Mr. Jassy was recently given the title "CEO" of AWS by the management of Amazon, he is the manager of just one business unit of Amazon. In fact, he has had that position at AWS since its inception in 2003, and for most of that time held the title of Senior Vice President—the same position as two of IBM's deponents, Mr. Kavanaugh and Mr. Krishna.

Courts have held, time and again, that litigants are not permitted to unnecessarily force CEOs to testify in this manner. In order to compel a CEO's testimony, a party must establish that she has unique or superior knowledge of the relevant facts in the case *and* that the information sought cannot be obtained through less burdensome means.

Smith contends that Mrs. Rometty made the decision to proceed with this lawsuit, and thus her motives are relevant. He claims that Mrs. Rometty commented to another IBM executive that the Company should to be consistent in the enforcement of IBM's noncompetition agreements. Mrs. Rometty's view on this issue is not relevant to the motion before the Court, and is certainly not grounds for denying injunctive relief. And apart from its irrelevance,

probing the CEO's considerations and reasons for approving this lawsuit would require disclosure of her conversations and deliberations with counsel, including the legal analysis and legal advice she received. That itself reveals the impermissible purpose behind the effort to compel Mrs. Rometty to testify at the hearing.

The only genuine issue to be decided at this preliminary injunction stage is whether the former employee (Smith) has trade secrets he is likely to inevitably disclose by taking the proposed job at the new employer (AWS). Mrs. Rometty has no unique or non-cumulative knowledge about the facts germane to that issue. Therefore, Smith has not met his burden, and the Court should quash the subpoena on Mrs. Rometty.

## BACKGROUND

From 2014 until May of this year, Defendant Jeff Smith was a senior executive and Chief Information Officer of IBM. Because Smith's job exposed him to IBM trade secrets and competitively sensitive information, he was required to sign a noncompetition agreement barring him from working for an IBM competitor in certain positions for twelve months after departing IBM.

While working at IBM, Smith repeatedly and surreptitiously communicated with Mr. Jassy, the CEO of one of IBM's biggest competitors, AWS. Mr. Jassy recruited Smith to leave IBM and work directly for him at AWS. On May 5, 2017, Smith resigned from IBM, and approximately one month later, he told IBM that he had accepted a job with AWS that would commence on August 7, 2017.

On August 1, 2017, IBM filed this action seeking to enforce Smith's noncompetition and customer nonsolicitation obligations, and sought a temporary restraining order barring Smith from beginning work at AWS. After a hearing, the Court entered the requested order subject to limited carve-outs, and scheduled a preliminary injunction hearing for

August 21 and 24.  The parties are currently engaged in expedited discovery in advance of that hearing.

On August 9, 2017, pursuant to an order of the Magistrate Judge, IBM deposed Mr. Jassy, the AWS CEO.  On August 10, 2017, the very next day, Smith announced his intention to compel IBM's Chairman, President and CEO, Virginia Rometty, to testify at the preliminary injunction hearing on August 24.  (Signoracci Decl. Ex. 3.)  Smith had never before included Mrs. Rometty on his witness lists, and he has not sought her deposition.  As explained above, Smith sat on his hands all this week despite having been told on Monday (August 14) that Mrs. Rometty is unavailable and out of the country next week.  (*See id*. Exs. 1–2.)

## ARGUMENT

### I.  <u>LEGAL STANDARD</u>

#### A.  <u>Courts Quash Subpoenas and Preclude Discovery Requests That Impose Undue Burden</u>

Federal Rule of Civil Procedure 45 provides that a district court "must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  Whether a subpoena subjects a witness to undue burden under Rule 45 turns on factors such as: whether the subpoena seeks relevant and material information; whether the information is necessary to the party; whether the information is available from other sources; whether the subpoena is reasonable in scope and particularity; and the degree of the burden imposed on the recipient.  *See, e.g.*, 9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2463.1 (3d ed.); *In re Application of Operacion y Supervision de Hoteles, S.A.*, No. 14 Misc. 82*,* 2015 WL 82007 (S.D.N.Y. Jan. 6, 2015); *Kirschner* v. *Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005); *Concord Boat Corp.* v. *Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996).  The decision whether a subpoena imposes an undue burden and should be

quashed is "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (internal quotation marks omitted).

Similarly, Federal Rule of Civil Procedure 26 authorizes a federal court to issue "an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or *undue burden* or expense." Fed. R. Civ. P. 26(c)(1) (emphasis added). Determining whether to issue a protective order requires a district court to balance the broad discovery permitted by the Federal Rules with the "obligation to ensure that discovery is not misused as a tool for oppression or harassment." *Bouchard* v. *New York Archdiocese*, No. 04 Civ. 9978, 2007 WL 2728666, at *3 (S.D.N.Y. Sept. 19, 2007). Federal Rule of Civil Procedure 26 also provides that a court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

**B.**     **Courts Apply Heightened Scrutiny to Requests to Examine Top-Ranking Corporate Executives**

Courts apply heightened scrutiny to requests to examine or depose high-level corporate executives. *Alex & Ani, Inc.* v. *MOA Intern. Corp.*, No. 10 Civ. 4590, 2011 WL 6413612, at *3 (S.D.N.Y. Dec. 21, 2011) (observing the "additional layer of protection for senior corporate executives"). When a subpoena seeks the testimony of a senior executive, the subpoenaing party must show good cause that the senior executive has "unique personal knowledge related to the relevant issues in the case." *Diesel Props S.r.L* v. *Greystone Bus. Credit II LLC*, No. 07 Civ. 9580, 2008 WL 5099957, at *1 (S.D.N.Y. Dec. 3, 2008); *accord In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, No. MDL 1428, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006); *Deluca* v. *Bank of Tokyo-Mitsubishi UFJ*, No. 05 Civ. 639, 2007 WL

2589534, at *1–2, *4 (S.D.N.Y. Aug. 30, 2007). If the executive lacks "unique knowledge of the issues in the case, it may be appropriate to preclude [the] deposition . . . while allowing other witnesses with the same knowledge to be questioned." *Retail Brand Alliance, Inc.* v. *Factory Mut. Ins. Co.*, No. 05 Civ. 1031, 2008 WL 622810, at *5 (S.D.N.Y. Mar. 7, 2008) (internal citations and quotation marks omitted).

Even if the executive has knowledge of information that is relevant to the case, the party seeking the information should first exhaust less burdensome avenues of obtaining it, including from lower-level executives. *Gen. Star Indem. Co.* v. *Platinum Indem. Ltd.*, 210 F.R.D. 80, 82-83 (S.D.N.Y. 2002); *see also In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646, 2013 WL 5762923, at *2 (S.D.N.Y. Oct. 24, 2013) ("[E]ven if a witness might have discoverable information, a party is not always entitled to depose that individual.") (internal quotation marks omitted); *Thomas* v. *Int'l Bus. Machines,* 48 F.3d 478, 483–4 (10th Cir. 1995) (affirming order quashing deposition of IBM CEO in employment discrimination suit where plaintiff could have but did not depose "Thomas' direct supervisors, who conducted the performance evaluations and ranking").

Accordingly, the testimony of a high-ranking corporate executive should not be required (1) if the person lacks material information *or* (2) if that information can be obtained elsewhere: "Where a party is unable to show that a high-ranking corporate official possesses knowledge that is *both* unique *and* relevant to the issues in the case, a court may prevent deposition of that official." *Guan Ming Lin* v. *Benihana National Corp.*, No. 10 Civ. 1335, 2010 WL 4007282, at *2 (S.D.N.Y. Oct. 5, 2010) (emphasis added); *accord Bey* v. *City of New York*, No. 99 Civ. 3873, 2007 WL 1893723, at *1 (S.D.N.Y. June 28, 2007); *Harris* v. *Comp. Assoc. Int'l*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001).

This "extra layer of protection" for high-ranking executives is based on the recognition that "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." *Consol. Rail Corp.* v. *Primary Indus. Corp.*, Nos. 92 Civ. 4927 & 92 Civ. 6313, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993); *see also Chevron Corp.* v. *Donziger*, No. 11 Civ. 0691, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013); *Bouchard*, 2007 WL 2728666, at *3 ("Likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate executives.").

Although the rationale for this extra layer of protection is often expressed in so-called "apex deposition" cases, the limitation is not confined to depositions; indeed, it applies with even greater force to live, courtroom testimony. In 2014, Amazon itself successfully moved to quash a trial subpoena served on Amazon Chairman and CEO Jeff Bezos. Amazon argued that Bezos did not possess noncumulative or unique information regarding the relevant issues and that those same areas would be covered by other witnesses. The court agreed, and quashed the trial subpoena:

> [C]ourts have required the requesting party to show that the executive possesses unique knowledge of relevant facts and that the information sought cannot be obtained by less burdensome means . . . . [R]espondent's need for Mr. Bezos' testimony is minimal . . . . Respondent has already elicited testimony from witnesses who dealt with the relevant topics on a day-to-day basis and who testified about them with a granular level of detail. High-level testimony from Mr. Bezos on these topics would add little. Preparing him to testify in any detail on such a broad range of topics would be exceptionally time consuming . . . . Mr. Bezos is the CEO of one of the largest companies in the United States. The possibility that he could be required to testify for a full day on subjects that have been comprehensively covered by other witnesses confirms the burdensome nature of respondent's request . . . . The invocation of this special rule with respect to Mr. Bezos in particular is amply justified under the circumstances.

8

*Amazon.com, Inc.* v. *C.I.R.*, 108 T.C.M. (CCH) 588 (T.C. 2014) (internal citations omitted); *see also Plew* v. *Ltd. Brands, Inc.*, No. 08 Civ. 3741, 2012 WL 379933, at *3 (S.D.N.Y. Feb. 6, 2012) (granting defense motion to prevent plaintiff from calling Victoria's Secret CEO as a trial witness, and noting "the potential for harassment and disruption to business affairs when highly-placed executives are forced to testify," particularly where the plaintiff "already deposed two senior executives with knowledge of the product, but has made no effort to depose" the CEO).

## II.     THE COURT SHOULD QUASH THE SUBPOENA

### A.     Mrs. Rometty Does Not Have Unique Knowledge of Material Facts

Mrs. Rometty is not just a high-ranking executive of IBM, she is the highest ranking executive in the Company as its Chairman, President and Chief Executive Officer. Although various IBM executives do report directly to Mrs. Rometty, Smith was never one of them. Instead, he reported to Mr. Kavanaugh, a Senior Vice President who IBM is presenting for deposition in this case. And IBM is presenting another Senior Vice President, Arvind Krishna, the head of the IBM Technology Team on which Smith served.

Because Mrs. Rometty did not directly supervise Smith's work at IBM, she does not have superior or unique knowledge of any of the material facts on which this case turns. She is not the person who can best (or uniquely) testify to Smith's responsibilities at IBM; she is not the person who can best (or uniquely) testify to all the types of confidential and competitively sensitive information that Smith possesses; and she has no personal knowledge of AWS's efforts to recruit Smith or the scope of any responsibilities that he would have at AWS.

Although Smith participated in executive meetings and discussions with Mrs. Rometty at which IBM's confidential information was discussed, so did other IBM executives who are already scheduled to testify in this proceeding, including Mr. Kavanaugh and

Mr. Krishna.  Thus, Mrs. Rometty does not have superior, unique or special knowledge of those meetings and discussions.

Given Mrs. Rometty's lack of material involvement with the issues presented in this case, Smith has come up with a pretext for her testimony.  He contends that his attorneys "believe that Ms. Rometty made the determination to seek to preclude Smith from working for Amazon Web Services, Inc. and that she did so for illegitimate and improper reasons."  (*See* Signoracci Decl. Ex. 5.)  That vague suspicion by counsel does not suffice for compelling Mrs. Rometty's testimony.  Smith's counsel's "beliefs" are not a basis to compel IBM's CEO to testify.

That Mrs. Rometty, as chief executive, may have authorized the company's attorneys to commence litigation is an unremarkable fact, and the facts concerning that decision are not material to this proceeding.  The issues before the Court are whether Smith possesses IBM trade secrets (there are other IBM executives who will testify about that) and whether Smith's proposed job at AWS will make it likely that he will inevitably use and disclose these trade secrets at AWS (Mrs. Rometty has no unique knowledge about that).  Smith's suspicion that Mrs. Rometty "made the determination to seek to preclude" him from going to AWS is another way of saying that Mrs. Rometty, as President and CEO, approved the filing of this lawsuit.

Courts have repeatedly observed that a party's motivation for filing suit is not relevant.[1]  Indeed, if motive to file suit were a sufficient basis to compel Mrs. Rometty to testify,

---

[1]   *See, e.g.*, *Mendell In Behalf of Viacom, Inc.* v. *Gollust*, 909 F.2d 724, 729 (2d Cir. 1990) (noting that a plaintiff's "motives for bringing suit are not relevant"); *Rayfield Aviation, LLC* v. *Lyon Aviation, Inc.*, No. 1:11CV274, 2012 WL 3095332, at *2 (M.D.N.C. July 30, 2012) (concluding "that the 'motive' for the suit is not relevant to the actual breach of contract claims"); *Cresswell* v. *Prudential-Bache Sec. Inc.*, 105 F.R.D. 64, 64 (S.D.N.Y. 1985)

then Chief Executive Officers could be compelled to testify in virtually every non-compete lawsuit. But the issue for the preliminary injunction hearing is not who or why counsel was authorized to pursue litigation, but whether Smith poses a risk of using or disclosing IBM trade secrets by becoming the Vice President of AWS during the remaining 8 months of his non-competition agreement. Seeking to force Mrs. Rometty to testify at the hearing is a wasteful distraction and an impermissible form of harassment.

Smith claims that, "Ms. Rometty said to Mr. Kavanaugh 'we didn't let Sandy Carter [another former IBM employee who left to work for AWS] off the hook, how can we let Jeff [Smith] off the hook – he's more senior.'" (*See id*. Ex. 6.) Even if that were actually said and even if it were somehow relevant, Mrs. Rometty merely expressed the view that the company should enforce the company's non-competition agreement consistently, especially in the case of a "more senior" executive like Smith who had exposure to and was entrusted with the company's most competitively-sensitive trade secrets and closely guarded confidential information.

Smith also has suggested that IBM uses its non-competition agreement for the "illegitimate" purpose of talent "retention" (*see id.*), but that is no defense to the Court enforcing Smith's noncompetition agreement in order to protect the Company's trade secrets. *Estee Lauder Companies Inc.* v. *Batra*, 430 F. Supp.2d 158, 179 (S.D.N.Y. 2006) ("[A]ll covenants not to compete are motivated at least in part by a company's desire to protect management talent from being lured by competitors only to the extent that they are legally entitled to."). That is

(decision to file suit not relevant); *Rhone-Poulenc Rorer Inc.* v. *Home Indem. Co.*, No. CIV. A. 88-9752, 1991 WL 183842, at *2 (E.D. Pa. Sept. 16, 1991) ("[T]he motive behind the institution of an action has been deemed not relevant to the subject matter involved . . . . This reasoning has been consistently followed where discovery has been sought concerning a party's motives in filing suit."); *Digital Equip. Corp.* v. *Sys. Indus., Inc.*, 108 F.R.D. 742, 743 (D. Mass. 1986) (same) (collecting cases).

especially true where, as here, the departing executive possesses highly confidential information that he will likely use for the benefit of his new employer—a fierce competitor of his former employer.

Lastly, testimony concerning IBM's decision to bring this lawsuit should not be permitted because it will raise serious attorney-client privilege problems. The decision here to bring suit was based on the legal analysis and legal advice of IBM's attorneys, including its General Counsel. Rometty Decl. ¶8. Seeking to compel such testimony should be rejected. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (providing that court must quash a subpoena that "requires disclosure of privileged or other protected matter"); Fed. R. Civ. P. 26(b)(1) (providing that a party "may obtain discovery regarding any *nonprivileged* matter that is relevant, if no exception or waiver applies") (emphasis added).[2] This puts IBM in the intolerable position of either standing by the privilege, and thus not fully responding to Smith's irrelevant allegations, or waiving the privilege and exposing the legal analysis, legal opinions, and legal advice behind the Company's determination to enforce its rights in court. That is an unwarranted burden and a form of harassment, and thus reinforces all the other reasons for quashing the subpoena.

---

[2] *See, e.g.*, *Select Comfort Corp.* v. *Tempur Sealy Int'l, Inc.*, No. 13 Civ. 2451, 2015 WL 12803579, at *3 (D. Minn. Apr. 7, 2015) (denying motion to compel CEO's deposition and finding that "any decision to initiate litigation made by the CEO of a company necessarily would involve consultation with both outside lawyers and general counsel, and therefore would be subject to the attorney-client privilege"); *Baird* v. *Koerner*, 279 F.2d 623, 630 (9th Cir. 1960) (observing that the "ultimate motive of the litigation" is protected by the attorney-client privilege) (quoting Wigmore on Evidence § 2313 (3rd Ed. 1940)); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. CIV.A. 05-441-JJF, 2009 WL 2030967, at *2 (D. Del. July 7, 2009) (noting that discovery requests "implicate the attorney-client privilege" where they asked a party "to disclose its reasons for commencing litigation").

## B.    Any Relevant Information Mrs. Rometty Has Can Readily Be Obtained Through Other Witnesses

Even if Smith could identify material and unique information that Mrs. Rometty alone possesses, he has not shown that such information could not be obtained through less burdensome means—including through the testimony of all the other IBM senior executives who are witnesses in this case.

Information concerning the scope of Smith's job duties at IBM can be provided more easily and accurately by Smith's direct supervisor, Mr. Kavanaugh (a witness in this case). Information concerning the scope of the trade secrets and other competitive information that Smith learned when sitting on the Technology Team can be more easily provided by the person who leads the Technology Team, Mr. Krishna (a witness in this case).

Even if information concerning the decision to bring this action were relevant (and admissible), Mr. Kavanaugh can testify about that (subject, of course, to the attorney-client privilege).  Indeed, Smith alleges in his own declaration that it was *Mr. Kavanaugh* who (supposedly) allegedly heard Mrs. Rometty's comment and *Mr. Kavanaugh* who (supposedly) disagreed with enforcement of Smith's noncompetition agreement.  Mr. Kavanaugh already is being deposed.  That will more than suffice.

## C.    Mrs. Rometty's Declaration Establishes that She Does Not Have Unique Knowledge

Where the executive whose testimony is sought files an affidavit stating that he or she does not have unique knowledge of the relevant facts, courts can rely on that affidavit to find that the unique and superior knowledge standard has not been met.  *See, e.g., Diesel Props S.r.L*, 2008 WL 5099957, at *2 (affirming protective order where executive submitted affidavit stating that he had no unique personal knowledge of relevant facts); *Deluca*, 2007 WL 2589534, at *4 (granting protective order where executive submitted affidavit stating that he had no unique

personal knowledge of relevant facts); *Consol. Rail Corp.*, 1993 WL 364471, at *1 (same). A sufficient affidavit provides "an unequivocal statement that this witness lacks relevant knowledge." *Arkwright Mut. Ins. Co.* v. *Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, No. 90 Civ. 7811, 1993 WL 34678, at *2 (S.D.N.Y. Feb. 4, 1993) (denying a protective order where the potential deponent "proffered no affidavit denying knowledge of information relevant to this case").

Here, Mrs. Rometty has filed a declaration establishing that she was not Smith's direct supervisor, and does not have unique and superior knowledge concerning his responsibilities at IBM, his knowledge of IBM's confidential information and trade secrets, or Smith's recruitment by AWS and the responsibilities of his proposed employment there.

### D. Requiring Mrs. Rometty to Testify Would Create A Significant Burden

Under ordinary circumstances, Mrs. Rometty's position as the Chairman and CEO of IBM would make it extremely difficult for her to testify on short notice. Mrs. Rometty is, at all times—whether domestic or abroad—responsible for running all facets of the IBM organization. Requiring her to testify at the preliminary injunction hearing would disrupt her ability to lead this global organization, a fact courts have routinely recognized when weighing the necessity of a CEO's testimony. *See, e.g.*, *Chevron Corp.*, 2013 WL 1896932, at *1 (noting that courts give "special scrutiny to requests to depose high-ranking corporate and governmental officials" partly due to "the possibility of business disruption"); *Tri–Star Pictures, Inc.* v. *Unger*, 171 F.R.D. 94, 102 (S.D.N.Y.1997) ("[A] court must remain mindful that permitting unfettered discovery of corporate executives would threaten disruption of their business . . . ."); *Six West Retail Acquisition, Inc.* v. *Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y.2001) (observing that "business disruption" is among the "factors to be considered in deciding whether

to allow discovery of corporate executives"); *Gen. Star Indem. Co.*, 210 F.R.D. at 83 (courts

consider "the potential disruption of business").

But here, Mrs. Rometty will be out of the country next week—a fact made known

to Smith at the very beginning of this week.  Rather than acting on that fact, Smith stalled until

the last moment—last night at 10:15 p.m.—and gave one-day's notice for a day he knows Mrs.

Rometty is not available.  That is no notice at all.  This is what AWS itself said when it sought to

quash IBM's deposition subpoena to AWS's Mr. Jassy with "only" three-day's notice:

> As is obvious, IBM's offer no more takes into account Mr. Jassy's
> professional and personal commitments than does the initial
> unbridled subpoena.  ***Indeed, it is hard to imagine that IBM
> would allow for the same treatment of Ginni Rometty, if she were
> asked to appear for a deposition or hearing—a real possibility in
> this current litigation—particularly with three business days'
> notice***.

(Signoracci Decl. Ex. 7, at 5.)  The difference between Mr. Jassy and Mrs. Rometty—besides the

fact that Mr. Jassy *is* a material witness whose testimony Smith is presenting in his defense—is

that as soon as IBM learned Mr. Jassy would be largely unavailable before the hearing and then

entirely unavailable during the hearing, IBM noticed and took his deposition on August 9.

Smith chose for some tactical reason to disregard and disrespect Mrs. Rometty's

unavailability.  His subpoena is late, and seeks to compel irrelevant and unnecessary testimony.

It should be quashed.

### E.     Smith Seeks Mrs. Rometty's Testimony For An Improper Purpose

Courts closely scrutinize requests to examine top-level executives in part to

protect against harassment.  Here, the circumstances demonstrate that Smith seeks

Mrs. Rometty's testimony for an improper purpose that amounts to harassment.

Smith has never deposed Mrs. Rometty.  His counsel did not even notice her

deposition.  Mrs. Rometty is the only person who is listed on the hearing's witness list who was

not deposed or scheduled to be deposed. These decisions all confirm that even Smith and his counsel do not believe Mrs. Rometty actually has unique, material information. *See, e.g.*, *Amazon.com*, 108 T.C.M. 588 (noting "Mr. Bezos was not one of the individuals whom respondent elected to depose."); *Plew*, 2012 WL 379933, at *3 (noting that plaintiff deposed two senior executives but failed to depose the CEO before subpoenaing the CEO's trial testimony).

Given Mrs. Rometty's lack of direct involvement in this case, Smith's decision to call her as a witness represents an attempt to get "even" with IBM, to harass the company and Mrs. Rometty, and potentially to discourage IBM from pursuing this or similar litigations by creating an undue burden or embarrassment. Courts have routinely recognized that the potential for harassment is high when litigants seek testimony from corporate leaders. *See, e.g., Chevron*, 2013 WL 1896932, at *1 ("special scrutiny" required partly due to "the potential for harassment"); *Tri–Star Pictures*, 171 F.R.D. at 102 (noting that unlimited discovery of corporate executives "could serve as a potent tool for harassment in litigation"); *Six West Retail Acquisition*, 203 F.R.D. at 102 (noting "[l]ikelihood of harassment" as relevant factor); *General Star*, 210 F.R.D. at 83 (noting that "[a] court must examine the possibility of harassment").

\*    \*    \*

Because the subpoena issued to Mrs. Rometty would not elicit relevant and material evidence that cannot be obtained from other senior IBM executives, and because it is was intended to harass and burden IBM and Mrs. Rometty, the Court should quash it and issue a protective order.

**CONCLUSION**

For the foregoing reasons, the Court should quash the subpoena on Mrs. Rometty and issue a protective order precluding her testimony.

Dated: New York, New York
      August 18, 2017

                 Respectfully submitted,

                 PAUL, WEISS, RIFKIND, WHARTON &
                    GARRISON LLP

                 By: */s/ Robert A Atkins*
                    Robert A. Atkins
                    Lorin L. Reisner
                    Gregory F. Laufer
                    1285 Avenue of the Americas
                    New York, New York 10019-6064
                    (212) 373-3000
                    ratkins@paulweiss.com
                    lreisner@paulweiss.com
                    glaufer@paulweiss.com

                    *Attorneys for Plaintiff*
                    *International Business Machines Corporation*