# Schulte Roth&Zabel LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number                                                       Writer's E-mail Address
212.756.2048                                                                ronald.richman@srz.com

August 18, 2017

**VIA ECF**

The Honorable Paul E. Davison
United States Magistrate Judge
The Hon. Charles L. Brieant Jr. Federal Building and
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

> Re:   *International Business Machines Corporation v. Jeff S. Smith*,
> Case No. 7-17-cv-05808 (CS)(PED)

Dear Magistrate Judge Davison:

Schulte Roth & Zabel LLP is co-counsel to defendant Jeff Smith in the referenced litigation.  We write to request that the Court, for the reasons below, (a) permit Mr. Smith to file on ECF the letter we submitted to the Court by hand on Monday, August 14, 2017, (b) unseal Plaintiff IBM's Memorandum of Law in Support of Its Application for a Temporary Restraining Order and Motion for a Preliminary Injunction (the "TRO/PI Brief") (Docket No. 19), (c) order the parties to file their respective Proposed Findings of Fact and Conclusions of Law (the "Proposed Findings and Conclusions"), and the Declaration of Bernard Golden (including the exhibits thereto) (the "Golden Declaration") and the Declaration of Jeff P. Smith (without the exhibits thereto) (the "Smith Declaration") submitted in support of Mr. Smith's Proposed Findings and Conclusions, on ECF, with appropriate redactions (if any), (d) unseal the transcript of the discovery hearing held on Monday, August 14, 2017, and (e) unseal IBM's Memorandum of Law in Opposition to Defendant's Motion to Vacate Temporary Restraining Order (the "Motion to Vacate Opposition Brief") (Docket No. 55).

> **Mr. Smith Should Be Permitted to File His Counsel's August 14, 2017 Letter to the Court on ECF.**

Out of an abundance of caution, we delivered our letter to the Court on Monday, August 14 by hand, rather than filing it on ECF, even though we did not believe it contained any confidential information or trade secrets, because we believed it was likely that IBM would argue that it contained confidential information and/or trade secrets.  Two documents referenced in the letter were produced by IBM with confidentiality designations pursuant to the

The Honorable Paul E. Davison
August 18, 2017
Page 2

Confidentiality Stipulation and Protective Order, as modified by the Addendum Order.  (Docket No. 36.)  None of the information set forth in the letter or the referenced documents is protectable, however.  Because the letter does not contain confidential information or trade secrets and does not meet the standards for filing documents under seal, which we discuss below, it should be part of the public record and available on ECF.

Per order of the Court, a party that wishes to file a document under seal must make an application to the Court, which "must include a showing that the standards for sealing have been met."  (Docket No. 36 (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006)).  "There is a strong presumption that the public should be able to access every single document filed with this court of law."  *Saks Inc. v. Attachmate Corp.*, No. 14 Civ. 4902(CM), 2015 WL 1841136, at *14 (S.D.N.Y. Apr. 17, 2015).  Redactions of documents filed with the Court, and limits or prohibitions on a nonparty's remote access to such documents, may be made only upon a showing of "good cause."  Fed. R. Civ. P. 5.2(e).  "To establish good cause, a party must demonstrate that 'a clearly defined and serious injury . . . would result from disclosure of the document.'"  *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, No. 04-CV-5540 (DGT), 2010 WL 3924689, at *2 (E.D.N.Y. Sept. 28, 2010) (internal quotation marks omitted) (ellipses in original) (quoting *Allen v. City of New York*, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006)).

IBM cannot make that showing.  At most, IBM can argue that the material in our letter would be embarrassing to IBM if made public, particularly with respect to IBM senior personnel's discussions regarding the reasoning for IBM's attempts to enforce Mr. Smith's non-competition agreement, the opinion of senior IBM officers and counsel regarding the purpose of IBM's non-competition agreements generally, and emails in which certain high-profile IBM personnel voiced disagreement with certain IBM business decisions.  "A 'generalized concern of adverse publicity' is not, however, a sufficiently compelling reason to outweigh the presumption of access."  *Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-CV-5023 (CBA), 2010 WL 889799, at *8  (E.D.N.Y. Mar. 8, 2010).  As a result, IBM's potential embarrassment does not outweigh the right the public has to access the information set forth in our letter.

**The Court Should Unseal IBM's TRO/PI Brief.**

IBM made numerous redactions in the publicly filed version of its TRO/PI Brief.  None of the redactions IBM made in its TRO/PI Brief were proper.  Accordingly, IBM's entire TRO/PI Brief should be available to the public on ECF.

IBM's redactions fall into four categories: (1) instances in which Mr. Smith criticized IBM to a person at another company, (2) references to the names of certain teams at IBM, (3) references to codenames of IBM projects, and (4) references to the fact that certain IBM products and services were designed to compete with AWS.  None of this information is in the nature of a trade secret or is sensitive enough to override the strong presumption of access to the TRO/PI Brief.  For the same reasons discussed above, the potential embarrassment to IBM as a result of criticisms by Mr. Smith does not warrant depriving the public of access to a judicial document.  *See Nycomed*, 2010 WL 889799, at *8.  The names of IBM teams and codenames of IBM projects cannot properly be considered trade secrets or a basis for sealing a judicial

The Honorable Paul E. Davison
August 18, 2017
Page 3

document.  In fact, IBM's own website identifies several individuals as members of IBM's Technology Team.  *See, e.g.*, *IBM Executives*, IBM, https://www-01.ibm.com/events/wwe/edge/edge16meeting.nsf/mtg_execlist_ext.xsp (last accessed Aug. 18, 2017) ("[Bradley McCredie] is also a member of IBM's Technology Team, a senior executive group that sets IBM's technical strategy."); *IBM Investor Briefing*, IBM, https://www.ibm.com/investor/att/pdf/2015_Investor_Briefing_Bios.pdf (last accessed Aug. 18, 2017) ("Mr. LeBlanc also chairs IBM's Technology Team, a senior executive team responsible for setting IBM's technology agenda.").  Further, at least one of the codenames that IBM redacted in the publicly filed version of its TRO/PI Brief—"Genesis"—is publicly known to be a codename for IBM's next generation cloud-related project.  *See* Ed Scannell, *IBM Strategic Imperatives Mark a Transition into Software and Services*, TechTarget (July 2017), http://searchdatacenter.techtarget.com/feature/IBM-Strategic-Imperatives-mark-a-transition-into-software-and-services; *see also* Golden Declaration ¶ 28.  Finally, the fact that IBM has designed products and services to compete with AWS not only is not a secret, but IBM has disclosed this fact in its publicly filed Memorandum of Law in Support of Its Application for an order to Show Cause for Leave to File Under Seal by arguing that "[t]he IBM trade secrets and confidential information . . . Smith intends to bring with him to AWS include plans for new products and services IBM *designed specifically to compete in the Cloud Computing business in which AWS competes directly against IBM*, which are expected to be launched in the coming year."  (Docket No. 9, p. 1 (italics in original).)

Courts recognize a particularly strong presumption of access to "judicial documents," which are documents "relevant to the performance of the judicial function and useful in the judicial process."  *Schiller v. City of New York*, No. 04 Civ. 7922(KMK)(JC), 04 Civ. 7921(KMK)(JC), 2006 WL 2788256, at *3 (S.D.N.Y. Sept. 27, 2006) (quoting *Lugosch*, 435 F.3d at 119).  "There is no question that motion papers—that is, documents that seek to invoke the adjudicative powers of the court—are judicial documents and are thus presumptively to be filed publicly."  *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483 RCC/MHD, 2006 WL 3016311, at *2 (S.D.N.Y. Oct. 23, 2006); *see also id.* at *3 ("Motion papers, including briefing and any affidavits, constitute an application for court action—that is, a request for adjudication.  As such, they are presumptively subject to public filing."); *Schiller*, 2006 WL 2788256, at *5 (denying motion to seal brief and supporting declarations and noting that "the brief and the accompanying declarations are the types of documents that 'are usually filed with the court and are generally available.'").  In fact, "a First Amendment right of access extends to pretrial motions and the papers submitted in support of them."  *Omnicom*, 2006 WL 2788256, at *2; *see also Schiller*, 2006 WL 2788256, at *5 (applying First Amendment right of access because "[l]egal memoranda 'have historically been open to the press and general public' and 'public access plays a significant positive role' in monitoring arguments over the sealing of court records").

"Once the weight of the presumption is determined a court must balance competing considerations against it."  *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995).  The TRO/PI Brief, as a memorandum of law submitted by IBM in support of its request that Mr. Smith be enjoined from working at AWS, is subject to this strong presumption of access.  *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004) ("[T]he

The Honorable Paul E. Davison
August 18, 2017
Page 4

presumptive right to 'public observation' is at its apogee when asserted with respect to documents relating to 'matters that directly affect an adjudication.'").  The strong presumption of access applies to the TRO/PI Brief "can only be overcome by extraordinary circumstances." *Saks*, 2015 WL 1841136, at \*16.  For the reasons above, IBM cannot come close to demonstrating the existence of any extraordinary circumstances that would permit the TRO/PI Brief to remain sealed.  The Court should make IBM's TRO/PI Brief publicly available.

### The Court Should Direct the Parties to File Their Respective Proposed Findings and Conclusions, the Golden Declaration, and the Smith Declaration on ECF.

The Court ordered the parties to submit their Proposed Findings and Conclusions to the Court, rather than file them on ECF.  Consequently, both parties submitted their respective Proposed Findings and Conclusions to the Court without also filing any version—even a redacted version—on ECF.  Because the Proposed Findings and Conclusions are "documents relating to 'matters that directly affect an adjudication,'" however, "the presumptive right to 'public observation' is at its apogee," and both parties' Proposed Findings and Conclusions of fact should be filed on ECF.  *Gambale*, 377 F.3d at 140.  Although certain information in the Proposed Findings and Conclusions may be protectable trade secrets, that is not a basis for the Proposed Findings and Conclusions not to be filed on ECF.  Rather, the parties should file their Proposed Findings and Conclusions prior to filing them on ECF, but with any trade secret information redacted that meets the rigorous standards imposed by the Court.  *See Saks*, 2015 WL 1841136, at \*19 n.6.

In addition, the Golden Declaration submitted in support of Mr. Smith's Proposed Findings and Conclusions should be filed publicly in full.  On August 10, 2017, the Court ordered that Mr. Golden not be provided with any information designated by IBM as confidential.  (Docket No. 40.)  Accordingly, Mr. Golden did "not review[] any of the documents produced by IBM in this matter, because of their alleged confidentiality," and thus did not discuss any confidential information in his declaration.  (Golden Declaration ¶ 2.)  Rather, Mr. Golden made his declaration "based upon [his] specialized knowledge of cloud computing and the allegations in the Complaint . . . ."  (*Id.*)

Finally, Mr. Smith should be allowed to file publicly his declaration in support of his Proposed Findings and Conclusions.  The bulk of the Smith Declaration does not contain any protectable IBM information.  For the reasons set forth above, Smith should be allowed to file the Smith Declaration (without its exhibits and with any appropriate redactions).

### The Transcript of the August 14, 2017 Discovery Hearing Should Be Unsealed.

The presumption that the transcript should be unsealed is particularly strong because it is a transcript of proceedings that occurred in open court and in which the Court specifically declined to grant IBM's request to close the hearing to members of the public in attendance and direct such individuals to leave.  *See Mariano v. LA Fitness, Inc.*, No. CV 09-1395(LDW)(ETB), 2010 WL 1459383, at \*2 (E.D.N.Y. Apr. 13, 2010) ("The presumption is

The Honorable Paul E. Davison
August 18, 2017
Page 5

strong in the instant case because Plaintiff's counsel seeks to seal a judicial record held in open court."); *Stern v. Cosby*, 529 F. Supp. 2d 417, 421 n.4 ("Once a video deposition is shown in open court at trial . . . it becomes a matter of public record and is to be made accessible to the public, except in the 'most extraordinary circumstances.'") (S.D.N.Y. 2007).  Counsel for IBM requested near the beginning of Monday's hearing that the transcript be sealed, but the Court granted leave to both parties to move to unseal any or all of the transcript.  There is no reason to keep the transcript under seal, however, because no confidential information or trade secrets were discussed at the hearing.  Although further details regarding potentially embarrassing information disclosed in our August 14 letter were discussed at the hearing, the possibility of embarrassment to IBM is not a reason to maintain the sealing of the transcript.  *See, e.g.*, *Nycomed*, 2010 WL 889799, at *8.

To the extent IBM argues that the references to "Genesis" in the transcript of Monday's hearing are confidential, this is unpersuasive.  As noted above, the fact that IBM is using "Genesis" as the codename for its next generation cloud-related project, is public knowledge.  No confidential details regarding Genesis were discussed at the hearing.

**The Court Should Unseal the Motion to Vacate Opposition Brief.**

A short while ago, IBM filed on ECF a heavily redacted version of its Motion to Vacate Opposition Brief, which it otherwise filed under seal.  There is no valid reason for this document to be redacted.  At issue in the motion that IBM opposes is the interaction among IBM's policy for the return of IBM-issued electronic devices, the allegations IBM made in its original complaint, and the statements IBM's representatives have made in public.  None of that has anything to do with IBM's confidential information or trade secrets.  Accordingly, IBM's Motion to Vacate Opposition Brief should be available in full, unredacted form on ECF.

For the foregoing reasons, we respectfully request (a) the Court's permission to file our August 14 letter publicly on ECF, (b) that the Court unseal the TRO/PI Brief, (c) that the Court order the parties to file their Proposed Findings and Conclusions, the Golden Declaration, and the Smith Declaration on ECF (with redactions, if appropriate), (d) that the Court unseal the transcript of the August 14, 2017 discovery hearing, and (e) that the Court unseal the Motion to Vacate Opposition Brief.  We thank the Court, in advance, for its attention to this matter.

Respectfully submitted,

/s/ Ronald E. Richman

Ronald E. Richman

cc:      All Counsel of Record