PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS  NEW YORK, NEW YORK 10019-6064
TELEPHONE  212-373-3000

UNIT 3601, OFFICE TOWER A
BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU  U K
TELEPHONE +44 20  7367 1600

FUKOKU SEIMEI BUILDING
2 2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU  TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST SUITE 3100
PO BOX 226
TORONTO ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE  SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
212-373-3183

WRITER S DIRECT FACSIMILE
212-492-0183

WRITER S DIRECT E-MAIL ADDRESS
ratkins@paulweiss.com

August 23, 2017

**Via ECF**

The Honorable Cathy Seibel
United States District Judge
The Honorable Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

   *International Business Machines Corporation* v. *Jeff S. Smith*, No. 17 Civ. 5808

Dear Judge Seibel:

   We submit this letter on behalf of Plaintiff International Business Machines Corporation ("IBM") to address the two legal issues Your Honor raised at the end of the day on Monday.

**Issue #1:  There Has Been No Trade Secrets Waiver**

   There is no precedent to support the proposition that, by showing a former employee in the course of noncompetition litigation the same confidential documents he had seen, studied and shared while he was an employee, the former employer waives trade secret protection.  There likewise is no such authority where the previously seen confidential documents are shown to a former employee pursuant to the terms of a Protective Order designed to preserve the confidentiality of those documents.

   Under New York law, whether information constitutes a trade secret turns on factors that include, as relevant here, "the extent of measures taken to safeguard the information and the ease or difficulty with which the information could be properly acquired or duplicated by others."  *HMS Holdings Corp.* v. *Arendt*, No. A754/2014, 2015 WL 4366681, at *9 (N.Y. Sup. July 14, 2015).  The "ultimate focus must be on whether the alleged trade secrets <u>have become generally known or readily ascertainable through proper means</u>." *Id.* (emphasis added).  Thus, in determining whether a party has waived a trade secret claim, courts ask whether the party has publicly disclosed the information or failed to take steps to protect it.  *See, e.g., Awards.com, LLC* v. *Kinko's, Inc.*, 834 N.Y.S.2d 147, 156 (1st Dep't 2007), *aff'd*, 14 N.Y.3d 791 (2010); *HMS Holdings*, 2015

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Cathy Seibel										2

WL 4366681, at *9; *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 417–19 (4th Cir. 1999); *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 848–49 (10th Cir. 1993); *Nat'l Polymer Prods., Inc. v. Borg-Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981).

   Here, IBM and Smith negotiated a Confidentiality Stipulation and Protective Order that prohibits disclosure to Smith of material designated by IBM as "highly confidential," *but also* explicitly and deliberately authorizes disclosure of such IBM material to Smith if: "from the face of the material . . . or from the source information provided by [IBM], he appears to have received it prior to the date such material [was] produced in this action"; or the material "concerns [Mr.] Smith's employment by [IBM] or the termination thereof"; or the material "is produced in response to [Mr.] Smith's discovery demands concerning [IBM's] trade secrets and confidential information that [Mr.] Smith allegedly possesses."

   Pursuant to those court-ordered procedures and protections, IBM questioned Smith at his deposition about "highly confidential" documents which (a) he had requested be produced in discovery, and (b) he admittedly had received, retained and requested as a member of the IBM Technology Team. IBM did *not* show Smith any confidential documents or share with Smith any confidential information that he had not already seen or known as an IBM executive.

   We know of no case law that would support a finding of waiver under these carefully controlled and protected circumstances. Smith had undeniably seen the documents before. The Confidentiality Stipulation and Protective Order expressly provided for their use with Smith, while also ensuring that they not be disclosed beyond Smith or his counsel. Thus, IBM designated the deposition transcript as "highly confidential." And the Court took the same precautions on Monday when the documents were shown to IBM's witnesses: Smith was permitted to remain in the courtroom, but all others – including AWS personnel and Smith's expert Mr. Golden – were asked to step outside.

   The purpose of implementing and following all these safeguards is to enable IBM to preserve – *i.e.*, not waive – its trade secret protections, while also seeking to prove its trade secrets and that Smith *already knows* those trade secrets. If trying to prove a trade secret misappropriation or inevitable disclosure case would itself constitute a waiver, that would seriously impair the ability of former employers to enforce noncompetition agreements in order to protect their trade secrets. We have found no law for such an illogical outcome.[1]

---

[1] To be clear, IBM does not contend that the 12-month term of the noncompetition agreement is or should be extended as a result of Smith's review of IBM's confidential documents during his deposition. IBM seeks to enforce Smith's noncompetition agreement through May 2, 2018, twelve months after he left the company.

Honorable Cathy Seibel 3

### Issue #2: "Motive" Is Not Relevant Here

IBM is aware of no case in New York or elsewhere holding that an employer's motive in deciding to seek enforcement of a noncompetition agreement could either void such an agreement as a matter of law, or prohibit enforcement to the extent necessary to prevent the potential disclosure of trade secrets.

On the contrary, in *Estee Lauder Cos., Inc.* v. *Batra*, 430 F. Supp. 2d 158 (S.D.N.Y. 2006), the Court *rejected* the argument of the defendant-former employee that injunctive relief should be denied because the non-compete agreement was being enforced for the "impermissible purpose" to "insulate [the former employer] from competition." The defendant proffered testimony from the former employer that the agreement was used "to secure the longevity of our management" and "make it harder for our competition to approach them." *Id.* at 178. The Court held that this evidence of one purpose for the agreement did *not* prevent enforcement under New York law where enforcement was "necessary to prevent the misuse of trade secrets." *Id.* at 179. The Court expressly addressed and rejected the defendant's motivation argument:

> [A]ll covenants not to compete are motivated at least in part by a company's desire to protect management talent to the extent that they are legally entitled to do so. New York law strikes a balance by permitting companies to protect their management from being lured by competitors only to the extent necessary to prevent the misuse of trade secrets. . . . To hold otherwise would essentially invalidate all covenants not to compete—a result New York courts obviously have not endorsed . . . . Accordingly, [defendant's] argument that the purpose of the Non-compete Agreement is pernicious to New York's policy regarding covenants not to compete is not credited.

*Id.* at 179 (internal citation omitted).

Smith's counsel asserted that *BDO Seidman* v. *Hirshberg*, 712 N.E.2d 1220 (N.Y. 1999), "says that [IBM's motive in bringing this case is] one of the most important questions in a trade secret case. If a trade secret noncompete injunction action is brought for the purpose of punishing someone, or preventing someone from leaving, . . . the New York Court of Appeals says the entire noncompete is void and unenforceable as a matter of law." (8/21/2017 Hearing Tr. at 35:19–36:1.)

That is not the holding of *BDO Seidman*, or any other New York case. Rather, *BDO Seidman* held that a noncompetition agreement is enforceable when it is reasonable and "necessary to protect the employer's legitimate interests." 712 N.E.2d at 1223. Evidence of the employer's motive in no way factored into the analysis on this issue. Instead, only *after* determining that the restrictive terms were both overbroad as written (not true here) and unreasonable as applied to the facts (also not true here) did the court consider "the conduct of the employer in imposing the terms of the agreement" to determine whether the court should narrow, or "blue pencil," an "unreasonable aspect of an overbroad agreement." *Id.* at 1226–27.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Cathy Seibel                                                                                               4

          The *Visentin* case also does not support Smith's position. *International Business Machines Corp.* v. *Visentin*, No. 11 Civ. 399, 2011 WL 672025 (S.D.N.Y. Feb. 16, 2011). There, the Court denied an injunction under an older IBM noncompetition agreement because the Court determined that (a) the old agreement was facially overbroad *and* (b) IBM failed to demonstrate a "legitimate interest" in enforcement – specifically, IBM failed to prove that the former employee possessed or threatened to disclose trade secrets. *Id.* at *21–22. And while it cited IBM testimony that a purpose of the "overbroad" agreement was intended to retain talent, the Court did *not* rule that any improper motive rendered the agreement unenforceable as a matter of law. Quite the opposite: the Court expressly noted that because "the reasonableness of IBM's Noncompetition Agreement is determined on a case-by-case basis . . . the Court <u>does not and cannot</u> address the validity of the Noncompetition Agreement under New York law generally." *Id.* at *22, n.7.

          It is important to stress that this discussion in *Visentin* is in a section about the "overbreadth" of the wording of the agreement and the lack of trade secret evidence. The Court found that the scope of that agreement was "facially overbroad" because it would prevent departing employees from working for any competitor in any capacity regardless of the need to protect trade secrets—*e.g.*, working in HP's printer business even though IBM does not make printers.

          That "overbreadth" is also what prompted Judge Preska's "Coda" about "whether partial enforcement is possible"—*i.e.*, despite the "overbroad" scope of the agreement as written, could the Court nonetheless enforce the agreement to prevent Visentin from taking the specific job at issue. Again, the analysis came down to the lack of trade secrets. Since the Court found that IBM had shown no legitimate business interest to protect *in the case of Mr. Visentin*, it could not satisfy the good faith test for partial enforcement.

          That is not an issue here. No "blue-penciling" is necessary here because Smith's agreement with IBM is neither overbroad as written nor unreasonable as applied to Smith given the trade secrets at stake. Any supposed motive by IBM or a single executive in seeking enforcement is irrelevant. IBM seeks full enforcement of Smith's agreement, because taking a position as one of the top ten executives at AWS puts IBM's trade secrets at risk of inevitable disclosure.[2]

---

[2] Even if the Court found that partial enforcement of Smith's agreement were appropriate, that would not justify an inquiry into the motives of IBM or any of its executives. Courts can and do order limited enforcement of noncompetition agreements without inquiring into the motives of an employer's executives. *See, e.g., Misys Int'l Banking Sys., Inc.* v. *TwoFour Sys., LLC*, No. 650101/2004, 2004 WL 3058144, at *8 (N.Y. Sup. Ct. Nov. 23, 2004) (enforcing 18-month restrictive covenant for 12-month period in light of rapid changes in the specific area of software sales business in which the employees were engaged).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Cathy Seibel											5

								Respectfully submitted,

								*[signature]*

								Robert A. Atkins

cc (by ECF): Counsel of Record