# Morgan Lewis

**Sarah E. Bouchard**
Partner
+1.215.963.5077
sarah.bouchard@morganlewis.com

August 23, 2017

**VIA ELECTRONIC MAIL**

Honorable Cathy Seibel
United States District Judge
The Hon. Charles L. Brieant Jr.
Federal Building and U.S. Courthouse
Courtroom 621
300 Quarropas Street
White Plains, NY  10601-4150

Re:   International Business Machines Corporation v. Jeff S. Smith
      Case No. 17-cv-5808 (CS) (PED) (S.D.N.Y.)

Dear Judge Seibel:

Mr. Smith submits this letter-brief to address two issues:  (1) whether IBM waived its right to trade secret protection; and (2) whether IBM's improper motive in enforcing the non-competition agreement provides further support for denying IBM's Motion for a Preliminary Injunction.

## I.   **IBM's Waived Its Right To Trade Secret Protection.**

Mr. Smith did not take any confidential documents when he left IBM, nor did he access or copy any such materials before he resigned.  Nevertheless, IBM seeks to prevent Mr. Smith from working at AWS in any capacity allegedly because he *saw* various presentations in certain team meetings – including the Technology Team bi-monthly meetings in October and December of 2016.  Mr. Smith has explained, however, that he could not remember the details from more than 100 pages of technical information included in the October and December 2016 meetings, all of which were wholly unnecessary for him to do his job at IBM.  IBM's own witness, John Considine, was similarly unable to recall the Technology Team presentations in any specificity when questioned about those specifics at his deposition.  (Preliminary Injunction Hearing Tr. 137:16-138:23).  One of the factors courts consider in assessing whether an employee can work at a competitor is whether the employee could remember the confidential information given the passage of time and without evidence of those documents being taken by the departing employee.  *IBM v. Visentin*, No. 11 CIV. 399 LAP, 2011 WL 672025, at *11 (S.D.N.Y. Feb. 16, 2011), *aff'd*, 437 F. App'x 53 (2d Cir. 2011).

Inexplicably, IBM's attorneys have taken the very information that Mr. Smith could not remember and covered it in painstaking detail at his deposition.  They did so upon objection by Mr. Smith's attorneys, in an effort to "refresh" Mr. Smith's recollection, showing him page after page and

calling his attention to detailed technical information he had long since forgotten. For example, instead of redacting specifics and asking whether he remembered the gigabit per second figures, they showed him the precise information they say an AWS executive should not be permitted to know. This tactic was not only unnecessary, but also highly improper, and as a result, IBM cannot meet its burden of showing that it took appropriate measures to protect its supposed trade secrets. *Defiance Button Machine Co. v. C & C Metal Prods.*, 759 F.2d 1053, 1063 (2d Cir. 1985) (the owner of a trade secret must take reasonable measures to protect its secrecy); *see also Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009). By disclosing its supposed trade secrets to an employee of a competitor who otherwise could not have recalled such technical details, IBM "forfeited the protections of trade secret law." *See Defiance Button Mach. Co.*, 759 F.2d at 1063-64 (plaintiff's customer lists lost their character as trade secrets because the company failed to take reasonable steps to protect the lists from coming into the hands of their competitor); *Sasqua Grp., Inc. v. Courtney*, No. CV 10-528, 2010 WL 3613855, at *19 (E.D.N.Y. Aug. 2, 2010), *report and recommendation adopted*, No. 10-CV-528, 2010 WL 3702468 (E.D.N.Y. Sept. 7, 2010).[1]

IBM also has waived its argument that the email exchanges between Mr. Smith and Mr. Jassy in 2015 and 2016 reveal confidential information. In this litigation, IBM has claimed that Mr. Smith surreptitiously engaged in email exchanges with Mr. Jassy that discussed confidential information concerning IBM's strategies and weaknesses. It is the main reason why IBM contends that Mr. Smith cannot work for AWS in *any* capacity, as it is IBM's contention that Mr. Smith will spill the proverbial beans to his supervisor, Mr. Jassy. But, if this contention is to be believed, it is difficult to understand why IBM showed the content of those email exchanges with Mr. Smith's expert, Bernard Golden, during his deposition.

Mr. Golden never signed an agreement to preserve confidences of IBM; in fact, IBM negotiated those protections out of the current Protective Order signed and entered by the Court in this matter. Confidentiality Stipulation and Protective Order (Dkt. 36); Letter from Sarah E. Bouchard to the Honorable Judge Paul E. Davison (Aug. 9, 2017) (Dkt. 37); Letter from Robert A. Atkins to the Honorable Judge Paul E. Davison (Aug. 9, 2017) (Dkt. 39); Order (Dkt. 40) (denying Defendant's request to share documents deemed confidential by IBM with Defendant's expert, Mr. Golden). It did so to enhance its argument that Mr. Golden should not have access to any confidential information. But even if the Protective Order covered Mr. Golden (which it does not), the owner of a trade secret waives its right to protect the trade secret where it discloses the information during a judicial proceeding, even where there is a protective order in place. *Littlejohn v. Bic Corp.*, 851 F.2d 680 (3d Cir. 1988) (disclosure of the information during trial constituted a waiver of whatever confidential interest might have been preserved under the protective order) *Weiss v. Allstate Ins. Co.*, No. CIV.A. 06-3774, 2007 WL 2377119, at *3 (E.D. La. Aug. 16, 2007). This rule applies even with respect to documents that are not filed with the court, such as deposition transcripts and exhibits. *W. Penn Allegheny Health Sys., Inc. v. UPMC*, No. 09–480, 2012 WL 512681 (W.D. Pa. Feb. 14, 2012); ("[p]revious disclosure of information in open court, and even outside of court, operates to waive any right to seal judicial records containing such information.").

---

[1] IBM may contend that no waiver exists because IBM has protections in place to safeguard its trade secrets, such as the Protective Order signed by the parties and entered by this Court. But that argument is nonsensical, as we are currently in litigation because IBM contends that Mr. Smith will not adhere to agreements he signed.

IBM's repeated waivers of trade secret protection preclude it from seeking injunctive relief. *See Awards.com, LLC v. Kinko's, Inc.*, 42 A.D.3d 178, 189 (N.Y. App. Div. 1st Dep't 2007) (dismissing claim for injunctive relief based on violation of nondisclosure agreement when plaintiffs publicly filed document allegedly containing trade secrets, and holding that "plaintiffs waived any trade secret protection").

Finally, IBM cannot establish that the *non-competition provisions* in Mr. Smith's Non-Competition Agreement are necessary to protect its trade secrets, given that IBM has shown highly confidential information to employees without valid Non-Competition Agreements. Arvind Krishna testified that IBM permits its California Technology Team participants to see the same materials. (Krishna Tr. at 69:6-71:25; Preliminary Injunction Hearing Tr. 83:20-85:21). Under such circumstances, courts have declined to enforce the non-competition agreement at issue. *Seneca One Fin., Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 463 (D. Md. 2016) (holding that since "the Contract already has a separate provision addressing the employee's confidentiality obligations, . . . the non-competition provision is unnecessary for the protection of this interest . . . [and since it] is not reasonably necessary to protect the goodwill that Ms. Bloshuk created with customers or Seneca One's Confidential Information, the provision is facially overbroad"); *Saban v. Caremark Rx, L.L.C.*, 780 F. Supp. 2d 700, 733 (N.D. Ill. 2011) (finding the non-competition agreement unnecessary because "[s]ince Saban intends to abide by the non-disclosure covenant and the evidence does not establish that he is likely to disclose confidential information, the non-disclosure agreement sufficiently protects Caremark's confidential proprietary information").

## II. IBM Is Seeking To Enforce Its Non-Competition Agreement For The Improper Purpose Of Stifling Competition.

Mr. Smith has presented evidence that IBM is attempting to prevent him from pursuing employment with AWS not because of any legitimate business interest, but rather for the improper purpose of stifling competition. Nothing has changed since the *Visentin* litigation. IBM's *current* attorneys and executives have stated that IBM still uses its non-competition program and the threat of litigation to restrain executives from leaving and to punish former executives who decide to work for competitors even in non-threatening positions. An in-house IBM attorney, Teri Wood, admitted to Mr. Smith that the *revised* non-competition agreement was drafted for the purpose of keeping executives from leaving IBM. Def.'s Proposed FOF and COL ¶ 5 (citing Smith Decl. ¶ 62). IBM's Senior Vice President of Transformation and Operations, James Kavanaugh – Mr. Smith's superior and a direct report to CEO Rometty – also confirmed that IBM was being punitive in its threat to prevent Mr. Smith from working at AWS. *Id.* (citing Smith Decl. ¶ 66). IBM did not even attempt to rebut those points with testimony from Ms. Wood or Mr. Kavanaugh. Indeed, it did not present a single witness to testify about the purpose of its "revised" non-competition program or the decision to seek enforcement to put Mr. Smith out of work. And, as recognized by the *Visentin* court, the purpose of IBM's clawback, which works in tandem with its non-competition program, "appears to be punitive; its only real purpose is to make it prohibitively expensive for an employee to leave his current employment with IBM." *Id.* ¶ 6 (citing 2011 WL 672025, at *22). IBM's improper motive provides further support for denying IBM's Motion for a Preliminary Injunction.

A non-competition agreement must be "*no greater* than is required for the protection of the *legitimate interest* of the employer." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388, 712 N.E.2d 1220, 1223 (1999). If IBM fails to satisfy its burden of proving that the restraints are reasonable and necessary to protect a legitimate interest, then the covenant is invalid. *Id.* at 388-89. This standard is not met where, as here, a non-competition agreement is "principally directed at restraining competition." *Laidlaw, Inc. v. Student Transp. of Am., Inc.*, 20 F. Supp. 2d 727, 763-64

(D.N.J. 1998); see also *Saban v. Caremark Rx, L.L.C.*, 780 F. Supp. 2d 700, 733 (N.D. Ill. 2011) (holding that non-competition agreement was "unenforceable as an unreasonable restraint" where it "was drafted in total disregard for the requirement that it not extend beyond Caremark's legitimate business interests" and partial enforcement "w[ould] only embolden Caremark to continue using an unreasonably broad covenant, to be tailored by a court only when an employee with the resources to challenge it does so.")).

In *Marinelli v. Medco Health Sols., Inc.*, the court relied on testimony at the preliminary injunction hearing indicating that "in seeking to enforce the non-compete clause, Medco was motivated by its desire to keep a highly competent employee rather than by a legitimate concern about protecting confidential information[.]" 951 F. Supp. 2d 303, 306 (D. Conn. 2013). There, a witness for Medco stated that Medco was less concerned with its confidential information and more with the need to protect "its personnel assets." *Id.* at 313. "Medco did not want to lose a valuable employee . . . and it did not want a competitor to gain a valuable employee." *Id.* The court found that Medco was not likely to succeed on the merits because "Medco's *motivation* in seeking to enforce the non-compete clause is to stifle competition, which is not a legitimate interest that can justify the use of a covenant not to compete." *Id.* at 315 (emphasis added). Here, the testimony of IBM's own former and current employees establishes that, like in *Marinelli*, IBM is attempting to enforce the non-competition agreement to prevent executives from pursing employment of their choosing, rather than to protect any legitimate business interest.

IBM's improper motive is evidenced by the fact that the CEO of IBM, Virginia Rometty, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. At that time, Ms. Rometty had no information as to what Mr. Smith's job would entail at AWS, whether he still had access to confidential information that was shown to him months earlier, or whether it was possible to scope his job at AWS so that he would not be in a position to use IBM trade secrets. Without any information suggesting wrongdoing by Mr. Smith, Ms. Rometty ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and as confirmed to Mr. Smith by his immediate superior, Mr. Kavanaugh, and by IBM's attorney, Ms. Wood, IBM is seeking to punish Mr. Smith for leaving the company and accepting a position with a competitor, rather than focusing on his duties and responsibilities at AWS to determine whether there is a risk of Mr. Smith using IBM trade secrets.[2]

In *OfficeMax Inc. v. Sousa*, the court concluded that attempts to enforce a non-competition agreement more broadly than drafted evidence an improper motive. 773 F. Supp. 2d 190, 212, 242 (D. Me. 2011). There, OfficeMax attempted to enforce its non-competition agreement to prohibit a former employee from working from any competitor in any capacity, despite the language of the agreement which limited the former employee from selling services or merchandise provided by his former employer. *Id.* at 212, 242. The court concluded that "OfficeMax's request that Mr. Sousa relinquish any employment with W.B. Mason goes beyond

---

[2] Even if IBM seeks only partial enforcement, its effort must fail. New York courts will partially enforce noncompetition agreements only "if the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, [and] has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing . . . ." *BDO Seidman*, 93 N.Y.2d at 394; *see also id.* at 395 (considering whether a noncompetition agreement "was part of some general plan to forestall competition").

Honorable Cathy Seibel
August 23, 2017
Page 5

what was contractually required of him and provides sufficient basis from which a jury could conclude that the lawsuit was intended to achieve an improper purpose. . . ." *Id.*

In sum, evidence from IBM's CEO – as well as a top executive and the in-house attorney with responsibility for the company's non-compete program – establish that IBM's motivation for enforcing the non-competition agreement is to stifle competition. Accordingly, because IBM is not attempting to protect any legitimate business interest, this Court must deny IBM's Motion for a Preliminary Injunction.

Respectfully,

*[signature]*

Sarah E. Bouchard

SEB/mmm

c:   All Counsel of Record